# Illinois Official Reports

## Appellate Court

---

### *People v. Crawford*, 2021 IL App (5th) 170496

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JARED R. CRAWFORD, Defendant-Appellant. |
| District & No. | Fifth District<br>No. 5-17-0496 |
| Filed | June 11, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Saline County, No. 16-CF-111; the Hon. Walden E. Morris, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Jerry A. Jefferson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Molly Wilson Kasiar, State's Attorney, of Harrisburg (Patrick Delfino, Patrick D. Daly, and Julia Kaye Wykoff, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE VAUGHAN delivered the judgment of the court, with opinion.<br>Justices Cates and Wharton concurred in the judgment and opinion. |

**OPINION**

¶ 1    A jury convicted defendant of aggravated battery for causing bodily harm to another in a public place of accommodation or amusement (720 ILCS 5/12-3.05(c) (West 2014)). Defendant appealed, raising several contentions of error. For the reasons below, we reverse defendant's conviction and remand for a retrial.

¶ 2                                    I. BACKGROUND

¶ 3    Throughout this opinion, we provide only the facts necessary for the resolution of this appeal. We provide a brief recount of the proceedings below and provide further detail, as necessary, in the analysis section.

¶ 4    On April 6, 2016, the State charged defendant, Jared R. Crawford, by information with one count of aggravated battery (count I) (*id.*), for knowingly causing bodily harm to Salathiel Johnson by striking him in the back of the head with a beer bottle at Los Amigos Bar, a public place of accommodation, on April 3, 2016. The trial was set for October 11, 2017. At the close of the business day on October 6, 2017, the State filed additional charges on defendant, stemming from an incident involving a shooting in the parking lot of Los Amigos Bar on April 3, 2016, which occurred after Johnson was hit with a beer bottle. Count II asserted that defendant unlawfully possessed a weapon as a felon (*id.* § 24-1.1(e)), and count III asserted that defendant attempted first degree murder by shooting at Veran Guyton with a firearm with the intent to kill him (*id.* § 8-4(c)(1)(C)). The day of trial, the State filed another charge for aggravated discharge of a firearm for defendant's knowing discharge of a firearm in the direction that defendant knew or reasonably should have known to be occupied by a person (count IV) (*id.* § 24-1.2(a)(2)). Count IV stemmed from the same events as counts II and III.

¶ 5    After hearing arguments from both parties, the trial court determined that the additional charges were not subject to compulsory joinder in that, based upon the face of the information, they did not constitute a continuation of the same act. However, the court found that count II was required to be severed from count I and that counts II, III, and IV should be tried separately from count I. Accordingly, the court determined that the trial would continue as planned on count I and that the remaining counts would be continued. Prior to trial, the court granted defendant's motion *in limine* to bar the State from presenting any evidence as to any alleged shooting committed by defendant after the incident in count I that gave rise to any charges.

¶ 6    At trial, the State presented the testimony of three witnesses—Johnson, Guyton, and Gus Zertuche. Guyton averred that he went to Los Amigos Bar to celebrate his birthday. He recalled that while speaking with Kody Weatherington, defendant approached Guyton and accused him of "placing money" on defendant's head. Guyton denied knowing anything about defendant's accusation. At that time, Johnson stepped in between defendant and Guyton. He further testified that, after telling defendant "we're not here for any trouble or anything," defendant struck Johnson in the head with a beer bottle. Guyton averred that he did not touch defendant at any time and was not standing in a large group of people when he saw defendant hit Johnson. On cross-examination, Guyton denied colluding with Johnson and Zertuche to fabricate his testimony.

¶ 7    Johnson testified that he stepped between defendant and Guyton, who were arguing. When he turned to make sure Guyton exited the bar, Johnson was hit with a bottle. Johnson did not see who hit him.

¶ 8    Zertuche averred that he was the lead bouncer at Los Amigos Bar the night of the incident and was long-time friends with Guyton. Later, Zertuche also testified that he was friends with Johnson. Zertuche stated that after Guyton and Johnson entered the bar, defendant and his friends became increasingly irritable. On two occasions, Zertuche had to tell defendant's friends to "chill out." Near closing time, Zertuche overheard defendant and Guyton arguing. He testified that Guyton and Johnson attempted to walk away from defendant and his friends, but they kept following Guyton and Johnson. Zertuche stated that at that time, his eyes were on Johnson and defendant, who started walking at a fast pace coming up behind Johnson. Zertuche further stated that he saw defendant reach for a full beer bottle and hit Johnson on the back of the head. Zertuche testified that he did not see Johnson or Guyton touch defendant at any point. On cross-examination, Zertuche averred that once the bar closed, he went to Johnson's house to check on him, but Johnson was at Guyton's house. So, Zertuche went to Guyton's house. Zertuche denied that he colluded with Johnson and Guyton to create a false story that defendant hit Johnson with the beer bottle.

¶ 9    During Zertuche's testimony, the State admitted Los Amigos Bar's surveillance video depicting the night of the incident. Zertuche narrated the events of the video and identified certain persons on the video. He testified that, at the time Johnson would have been hit, the video only showed Johnson's head go down and come back with Johnson reaching to the back of his head. During closing arguments, the State conceded that the video did not show defendant, or anyone, hit Johnson.

¶ 10    Despite the court's earlier ruling on the motion *in limine* to bar testimony regarding the shooting, Zertuche's answer to defense counsel's question regarding his bias on cross-examination mentioned the shooting in the parking lot. The State then argued that defense counsel opened the door, and the court allowed the State during redirect examination to elicit further testimony about the shooting, which brought the entire event of the shooting that had been barred before the jury.

¶ 11    Strawberry Hood and Weatherington testified on behalf of the defense. Hood stated that after defendant bought her a drink, she headed to the dance floor. As she walked to the dance floor, a few people walked past her to join the crowd that had already gathered near the front of the bar. Hood explained that security sensed something was going on, so everybody was rushing to one area. She, at no time, witnessed defendant involved in a confrontation with Guyton or Johnson.

¶ 12    Weatherington testified that he was speaking to Guyton immediately before Johnson was struck. He stated that as he spoke with Guyton, defendant was to the side of him buying drinks for everybody. Then, Johnson came up and bumped Guyton like they were friends to sort of push him out of the way so they could get closer to defendant, "pretty much *** trying to surround [defendant]." Weatherington averred that defendant did not throw anything or hit anybody. He further stated that defendant kept his hands down and someone else could have hit Johnson. On cross-examination, Weatherington admitted that he was a convicted felon for delivery of cannabis in 2016 and possession of a controlled substance in 2009.

¶ 13    After the parties made closing arguments and the court provided the jury with jury instructions, the jury convicted defendant of aggravated battery. The court then sentenced

defendant to five years' imprisonment. Defendant filed a timely appeal pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 14                              II. ANALYSIS

¶ 15        On appeal, defendant asserts several contentions of plain error and ineffective assistance of counsel. We do not consider each contention and address only those necessary for the resolution of this appeal or that may arise on remand.

¶ 16              A. Admission of Evidence Regarding the Shooting

¶ 17        Defendant argues that Zertuche's testimony concerning the shooting that occurred after the alleged aggravated battery of Johnson was improperly admitted. As noted above, prior to trial, the trial court granted defendant's motion *in limine* to bar the State from presenting any evidence as to any alleged shooting committed by defendant after the incident that gave rise to any charges.

¶ 18        During cross-examination of Zertuche, defense counsel inquired into the relationship between Zertuche, Guyton, and Johnson. After Zertuche testified that he went to Guyton's house to check on Johnson, the following exchange occurred:

> "[MR. DREW:] Did you go by—you went by [Johnson's] house to check on him. Did you go by [defendant's] to check on him?
>
> [ZERTUCHE:] No, I didn't.
>
> [MR. DREW:] How come you didn't go by and see him?
>
> [ZERTUCHE:] Why would I go by and see him? I didn't—at the time I didn't know anything was wrong with him. And they had fleed [*sic*]. And as far as I know, I'm standing in between them, he's shooting at me also so why would I go see him when I'm standing in the middle and he's shooting at me, too? If I shoot at you are you going to come and ask me how I'm doing?
>
> MR. DREW: Your Honor, may we approach?
>
> THE COURT: You may.
>
>               (SIDEBAR DISCUSSION HELD OUT OF THE HEARING
>                         OF THE JURY AS FOLLOWS:)
>
> MR. DREW: This is outside the scope we talked about.
>
> THE COURT: Well, because you brought it up.
>
> MR. DREW: Okay.
>
> THE COURT: So, I mean, he's answering your questions.
>
> MR. DREW: Okay, then I'll move there.
>
>                    (END OF SIDEBAR DISCUSSION.)
>
> [MR. DREW:] So did you go to the Evansville hospital to see [defendant] after he had been shot?
>
> [ZERTUCHE:] No, I did not.
>
> [MR. DREW:] And, in fact, the reason—when you got back to [Johnson] and [Guyton's] house the reason that things had to change and it had to be [defendant] who hit [Johnson] on the back of the head is because [Guyton] had shot [defendant] right

after that incident and that's how it had to go down or [Guyton] was going to prison forever?

[ZERTUCHE:] I watched him hit him in the head with a bottle, and I don't know why you're talking about the shooting that happened in the parking lot. We're talking about the incident inside the bar with the bottle and [defendant] hitting him in the head with the bottle. That's what we're talking about, correct? That's the question you asked me, correct? That's the question I'm answering."

¶ 19    Then, an on-the-record conversation occurred outside the presence of the jury. The State argued that because counsel elicited testimony regarding the shooting and indicated that Zertuche was somehow lying because Guyton shot the defendant, the jury needed to hear the whole course of the events. The court agreed and allowed the State to question the witness about the details of the shooting.

¶ 20    During the State's redirect examination, Zertuche testified that once the bar closed, an employee notified him that he needed to go outside. He went outside to a group of people mouthing off and pushing each other. Defendant was among these people and stated, "I live this life" or "I live this s***." Zertuche stated that once Guyton and Johnson made it to their car, defendant said "I'm going to blow your f*** head off tonight," while Zertuche was standing in between them. At that time, Zertuche heard Guyton say, "not tonight" and saw him reach into his car to grab his gun. As Guyton reached into his car, Zertuche observed defendant run to another car and ask for the "stick," which Zertuche averred is street slang for a gun. Zertuche testified he then went to the car that defendant was near and tried to calm him down. As Zertuche made his way back towards Guyton, he noticed defendant started to crouch, so Zertuche began to crouch. Zertuche stated that he never saw defendant with a gun, but as Zertuche crouched down, he observed a muzzle flash and heard gunshots coming from defendant's direction. At the same time, Zertuche heard gunshots coming from Guyton's direction behind him. Zertuche could not recall which gunshots he heard first.

¶ 21    On recross-examination, Zertuche stated that he heard six shots total, two shots from defendant's direction and four shots from Guyton's direction. Zertuche admitted that he did not indicate that defendant shot at Guyton or that he observed a muzzle flash in his police statement.

¶ 22    After Zertuche's testimony, the State stated to the court, "At this point these events outside are now in evidence and are relevant." The court, however, explained that the evidence of the shooting is not relevant, "it's never been relevant." The court therefore barred any other evidence regarding the shooting. The State clarified that it was not making an argument to now allow further evidence of shooting but was merely asking if such evidence was now admissible.

¶ 23    Defendant contends that the trial court committed plain error, under the first prong, when it determined that defense counsel opened the door to testimony concerning the shooting or, alternatively, that counsel was ineffective for opening the door by asking an open-ended question. In response, the State contends that defendant cannot show that error occurred and that the admission of the testimony was not prejudicial because there was overwhelming evidence of defendant's guilt.

¶ 24    The plain error doctrine allows reviewing courts to overlook a defendant's forfeiture of an error under two specific circumstances. *People v. Hileman*, 2020 IL App (5th) 170481, ¶ 40. The first step in determining whether plain error applies is determining whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49. Where clear error occurs, a

defendant is entitled to relief under the plain error doctrine if (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* ¶ 48.

¶ 25     Defendant asserts that the trial court erred by failing to strike Zertuche's testimony that defendant was "shooting at me also" because it was an off-the-cuff narrative to counsel's question that sought to expose Zertuche's bias. The erroneous ruling forced defense counsel's hand to ask Zertuche if he lied about seeing defendant to justify Guyton shooting defendant because, without such questioning, the jury would have only heard that defendant had a gun and shot at one of the State's witnesses. Defendant further complains that the court's decision to allow the State to ask Zertuche about the shooting in detail on redirect examination was also in error.

¶ 26     The State's argument to the contrary is twofold. It first contends, citing *People v. Carter*, 362 Ill. App. 3d 1180, 1189 (2005), and *People v. Thompson*, 359 Ill. App. 3d 947, 951 (2005), that other-crimes evidence is admissible when "it is part of a continuing narrative of the event giving rise to the offense or, in other words, intertwined with the offense charged." The State also argues that because counsel explicitly asked the witness questions regarding the shooting, counsel opened the door such that the State was entitled to ask the witness about the shooting on redirect to address his credibility. We disagree.

¶ 27     Evidence of other bad acts and/or crimes is not admissible to prove defendant's propensity to commit crimes. *People v. Liner*, 356 Ill. App. 3d 284, 292 (2005). Such evidence, however, is admissible where it is relevant for some purpose such as "to show knowledge, intent, absence of mistake or accident, and absence of an innocent mind frame or the presence of criminal intent." *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 55. "Even if other-act evidence is relevant, it must not become the focal point of the trial" due to the danger that juries will convict defendant based on their belief that defendant is a bad person deserving of punishment. *Id.* A court therefore should exclude relevant other bad acts and crimes evidence where its prejudicial effect outweighs its probative value. *Id.*

¶ 28     Evidence of other bad acts and crimes may also be admissible if it is part of the continuing narrative of the events giving rise to the charged crime. *Carter*, 362 Ill. App. 3d at 1189. "In contrast, other-crimes evidence may not be admitted under the continuing-narrative exception, even when the crimes occur in close proximity, if the crimes are distinct and 'undertaken for different reasons at a different place at a separate time.' " *People v. Adkins*, 239 Ill. 2d 1, 33 (2010) (quoting *People v. Lindgren*, 79 Ill. 2d 129, 139-40 (1980)). We review a court's decision to admit other bad acts and crimes evidence under an abuse of discretion standard. *Jaynes*, 2014 IL App (5th) 120048, ¶ 55.

¶ 29     On appeal, the State only cites to authority recognizing the continuing-narrative exception and does not make any argument regarding the continuing-narrative exception. It also fails to highlight any evidence at trial that presents more than speculation as to how the shooting was not a separate, distinct, or disconnected crime. See *Lindgren*, 79 Ill. 2d at 140 ("Other-crimes evidence cannot be admitted if the grounds for establishing its relevance are speculative."). As such, the State has forfeited this argument under Illinois Supreme Court Rule 341(h)(7), (i) (eff. Nov. 1, 2017). See *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 17 (an argument is

forfeited where a party's brief cites authority for a proposition "without articulating an argument based on it").

¶ 30 Moreover, the State's cited authority, *Carter* and *Thompson*, is distinguishable from the case before us. In *Carter*, the other-crimes evidence was admissible to explain certain conduct of the defendant and the victim that would otherwise be implausible or inexplicable. *Carter*, 362 Ill. App. 3d at 1190. Similarly, in *Thompson*, the other-crimes evidence was "part of the events that led to the charged offenses as it explains how the altercation between [the victim] and defendant arose." *Thompson*, 359 Ill. App. 3d at 951. Here, the absence of the shooting evidence would not leave certain conduct inexplicable. It did not further explain the aggravated battery that occurred before the shooting.

¶ 31 Rather, defense counsel questioned Zertuche about Guyton's part in the shooting only to attack the credibility of some of the State's witnesses. The State argued to elicit further testimony regarding the shooting to reveal the whole events that occurred in an attempt to show that defense counsel's implications were incorrect and to bolster its witnesses' credibility. The State's decision to not argue that the shooting evidence was admissible for some relevant purpose after the court determined the evidence was never relevant and barred any other evidence on the subject also supports this conclusion.

¶ 32 We next address whether the State was entitled to question Zertuche about the shooting because defense counsel "opened the door" to such questioning, which is better framed as a curative admissibility argument. Under the doctrine of curative admissibility, "where the door to a particular subject is opened by defense counsel on cross-examination, the State may, on redirect, question the witness to clarify or explain the matters brought out during, or to remove or correct unfavorable inferences left by, the previous cross-examination." *People v. Manning*, 182 Ill. 2d 193, 216 (1998). The rule is protective and "goes only as far as is necessary to shield a party from adverse inferences." *Id.* at 216-17.

¶ 33 We doubt the State was in any way prejudiced by Zertuche's response to defense counsel's question, where the witness only averred that defendant "also shot" at him and made no mention of anyone else's actions. Nevertheless, the evidence—at most—raised the adverse inference that some of the State's witnesses were lying. The State, however, went beyond correcting this inference. In its closing argument, the State said:

> "I think his conduct that you heard about outside the club says something about his state of mind and his behavior and what happened inside the club for all.
>
> Let's go through some of the statements you heard about him making. I live this s***. *** What, hitting people with a bottle and being a menace inside the club, be a thug or what? ***
>
> *** [Defendant] is still going after him. This is the most telling, I'm going to blow your *** head off. *** So he took it to a whole other level. Now he's trying to shoot somebody.
>
> So what does all this tell you about what might have happened inside the club ***? Does it make it more or less likely that what [Zertuche] told you about the defendant's behavior and how he was agitated or aggressive, does it make it more or less likely that what [Zertuche] said is true? Does it make it more or less likely that the defendant was the aggressor ***."

¶ 34　　These statements demonstrate the State's use of the shooting testimony as substantive evidence of defendant's guilt and his propensity to commit crime, although the court had ruled such evidence was not relevant. The State also later misrepresented what Zertuche said by claiming "it's only when the defendant shoots at [Guyton] that [Guyton] returns fire." The use of the evidence beyond a corrective measure was improper. This error is particularly significant where the court provided no limiting instruction to the jury to explain that Zeruche's testimony regarding the shooting could only be used in determining his credibility and could not be used as substantive evidence of defendant's guilt.

¶ 35　　More importantly, however, the trial court erred in allowing the State to elicit further information of the shooting on redirect examination—even if the State limited its use of the testimony to establish its witness's credibility—because the State cannot use defendant's prior bad acts or other crimes to bolster its witnesses' credibility. *People v. Thingvold*, 145 Ill. 2d 441, 459 (1991); *People v. Kliner*, 185 Ill. 2d 81, 147 (1998). The Illinois Supreme Court decision in *Thingvold*, 145 Ill. 2d 441, is controlling here.

¶ 36　　In *Thingvold*, defendant was on trial for soliciting Nalan to murder defendant's wife, Barbara. *Id.* at 445. Before trial, the trial court granted defendant's motion *in limine* barring the State from presenting evidence of Barbara's homicide, as the State could not connect defendant to the homicide. *Id.* at 457. During trial, defendant testified that Nalan, the State's witness, extorted money from defendant by threatening to inform police that defendant gave Nalan the keys to Barbara's car so that Nalan could tamper with it. *Id.* The trial court determined that evidence of Barbara's homicide was admissible for the limited purpose of witness credibility because defendant opened the door to such evidence. *Id.* at 458.

¶ 37　　The supreme court disagreed, finding that evidence of Barbara's homicide was not admissible to bolster the credibility of a prosecution witness. *Id.* at 459. In doing so, it explained that the State confused the "well-established principle" that other-crimes evidence is admissible when relevant for any purpose other than to show the propensity to commit a crime. *Id.* The " 'well-established principle' " is more accurately stated as " 'evidence of other crimes *committed by defendant* may be admitted if relevant to establish *any material question* other than the propensity of the defendant to commit a crime.' " (Emphases in original.) *Id.* (quoting *People v. Stewart*, 105 Ill. 2d 22, 62 (1984), *rev'd on other grounds*). It determined that Nalan's credibility was not a material question at trial. "Although Nalan's credibility is important to the State's ability to convict defendant, we fail to see how it is a 'material question' like motive, intent, absence of mistake, *modus operandi*, common scheme or design, etc." *Id.* at 460.

¶ 38　　Similarly, here, counsel asked about Guyton's part in the shooting to attack the credibility of Zertuche, who was friends with Guyton, and possibly Guyton as well. Because Zertuche's answer that first mentioned the shooting was responsive to defense counsel's question—although counsel's question did not explicitly mention the shooting—the court did not err in letting the answer stand. However, it was improper for the court to allow the State to elicit further details of the shooting on redirect, when the State failed to present sufficient evidence that the shooting evidence fell within an appropriate exception to the general prior bad acts and other-crimes evidence rule. This finding of error does not end our analysis, as defendant must also demonstrate prejudice.

¶ 39　　Under the first prong of plain error, defendant bears the burden of showing "the evidence was so closely balanced that 'the error alone severely threatened to tip the scales of justice.' "

- 8 -

*People v. Hileman*, 2020 IL App (5th) 170481, ¶ 41 (quoting *Sebby*, 2017 IL 119445, ¶ 51). To determine whether the evidence is closely balanced, we must "conduct a qualitative, commonsense assessment of [the evidence] within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. Such inquiry involves an evaluation of the totality of the evidence, including any evidence regarding witness credibility. *Id.*

¶ 40    Here, neither the physical evidence nor the surveillance video indicated that defendant hit Johnson. The case depended on witness testimony. The State presented two witnesses, Zertuche and Guyton, who testified that they observed defendant hit Johnson. Defendant raised an issue of bias regarding these witnesses as they admitted to being friends with Johnson. Defendant also argued that the two witnesses colluded together to create the story that defendant hit Johnson to excuse Guyton's later shooting of defendant.

¶ 41    On the other hand, defendant presented one witness, Weatherington, who testified that defendant did not hit Johnson at any time. The State challenged the credibility of this witness based on his felon status. It also asserted that his testimony was not credible because he testified to the events prior to the lights being turned on in the bar, and the video demonstrated that Johnson was hit once the lights were turned on.

¶ 42    After viewing the totality of the evidence, we find the evidence was closely balanced in this case. Despite the State's contention, we do not find that the minor inconsistencies in Weatherington's testimony render it entirely not credible, especially when the State's own witness, Guyton, testified Weatherington was located near Johnson immediately before defendant allegedly struck Johnson. Moreover, another State's witness, Zertuche, was equivocal on whether the lights were on or off when defendant struck Johnson. Zertuche further admitted on cross-examination that he forgot other minor details until reviewing the surveillance video.

¶ 43    Both parties presented plausible stories, and neither was corroborated by physical evidence. The outcome of the case depended on whether the jury found Zertuche and Guyton or Weatherington more credible. The evidence was therefore closely balanced. *People v. Naylor*, 229 Ill. 2d 584, 608 (2008) (evidence is closely balanced where witness credibility is the only basis upon which defendant's innocence or guilt could be decided).

¶ 44    As such, the error in allowing the State to improperly elicit details regarding the shooting—including threats made by defendant—and its use of the shooting as substantive evidence of defendant's guilt threatened to tip the scales of justice against defendant. See *Hileman*, 2020 IL App (5th) 170481, ¶ 41 (citing *Sebby*, 2017 IL 119445, ¶ 51). On this basis, we reverse defendant's conviction and remand for a new trial.

¶ 45    Consequently, we need not address defendant's other arguments on appeal. Nevertheless, we will address two of defendant's contentions of error that are likely to reoccur on remand. See *People v. Edmondson*, 328 Ill. App. 3d 661, 666 (2002).

¶ 46                            B. Admission of Gang Evidence

¶ 47    Defendant also raised an issue regarding gang-related evidence. The surveillance video—played during Zertuche's testimony—displayed a man in a striped shirt, and Zertuche identified the man as defendant but stated "I can't see very well" and "I can't tell at this time if it is him or not." He then testified the man in the striped shirt was "throwing up" a gun sign

and gang signs. After defense counsel's objection based on lack of foundation, the State asked Zertuche to explain his familiarity and experience with gangs and gang signs.

¶ 48 Defendant argues the trial court erred in allowing this testimony where the State failed to make a sufficient connection of a gang-related motive to the aggravated battery charge. As such, it was improper bad acts evidence.

¶ 49 Gang evidence is admissible where it is relevant and there is sufficient proof to show a connection, such as a common purpose or a motive, for the crime charged. *People v. Smith*, 141 Ill. 2d 40, 58 (1990). We review a trial court's decision to admit gang evidence for an abuse of discretion. *People v. Casillas*, 195 Ill. 2d 461, 483 (2000).

¶ 50 This small portion of Zertuche's testimony was the only gang-related evidence. It did not indicate, nor was sufficient to conclude, that the allegation that defendant hit Johnson in the head with a bottle was gang related. The State did not present any other evidence of gang activity, nor mention the alleged use of gang signs again. Accordingly, there was no evidence to conclude the charged crime was gang related.

¶ 51 The State does not dispute that it failed to sufficiently connect the aggravated battery to a gang-related motive but contends Zertuche's testimony does not constitute inadmissible bad acts evidence. It explains that "the concerns underlying the admission of other-crimes evidence are not present when the uncharged crime or bad act was not committed by the defendant" (*People v. Pikes*, 2013 IL 115171, ¶ 16), and Zertuche never identified defendant as the person allegedly "throwing up gang signs." Because Zertuche only testified to the man in the striped shirt as making gang signs, the State claims the evidence was admissible. We find this argument unpersuasive.

¶ 52 Although Zertuche never stated that the man in the striped shirt was defendant with certainty, based on his testimony as a whole, Zertuche indicated as such. On cross-examination, Zertuche testified that he previously pointed defendant out on the video. Moreover, in its closing arguments, the State stated Zertuche helped identify the people in the video and "[y]ou can see the defendant." Accordingly, the State imputed the gang-related evidence onto defendant, requiring that the evidence meet the gang-related exception to the prohibition on bad acts and other-crimes evidence. Because the State failed to meet the exception, admitting the gang-related evidence is also an error.

¶ 53      C. Instruction on Public Place of Accommodation or Amusement

¶ 54 Defendant also asserts that the trial court erred in instructing the jury on public place of accommodation or amusement. The court provided the jury with the State's instruction No. 15, a nonpattern instruction, that stated, "the term 'public place of accommodation or amusement' includes places where the public is invited to come into and partake of whatever is being offered therein, including without limitation bars and nightclubs," and included a citation to *People v. Murphy*, 145 Ill. App. 3d 813, 815 (1986).

¶ 55 Defendant argues that the court's instruction created a mandatory presumption that is *per se* unconstitutional. He explains that because the State charged him with aggravated battery on the theory that defendant caused bodily harm to Johnson in a public place of accommodation or amusement and Zertuche testified that Los Amigos Bar was a nightclub, the instruction required the jury to find the battery occurred in a public place of accommodation or amusement, an element of the offense.

¶ 56	In contrast, the State contends that it was still within the ambit of the jury to determine whether defendant entered such an establishment. The instruction merely defines a "public place of accommodation or amusement," but casts no finding on whether defendant committed the battery in such an establishment.

¶ 57	The State supports its argument by citing to *Murphy* (*id.*), which determined that the "place of public accommodation or amusement" in the aggravated battery statute applied generically to places where the public is invited to come into and partake of whatever is being offered therein. However, the issue in *Murphy* concerned the sufficiency of the evidence to support a conviction for aggravated battery, not whether a jury instruction that included bars and nightclubs in the definition of "place of public accommodation or amusement" was proper. *Id.* at 814-15. As such, we find *Murphy* does not guide our determination here.

¶ 58	Jury instructions serve the important purpose of "convey[ing] the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). The trial court's decision to provide an instruction is reviewed for an abuse of discretion. *People v. Choate*, 2018 IL App (5th) 150087, ¶ 23. Under that standard, we must determine whether the instructions, taken as a whole, "fully and fairly announce the law applicable to the theories of the State and the defense." *Mohr*, 228 Ill. 2d at 65. A trial court abuses its discretion if the instructions fail to accurately state the law or where the instructions "relieve the State of its burden of proving any element of the charge beyond a reasonable doubt." *Choate*, 2018 IL App (5th) 150087, ¶ 23.

¶ 59	Courts should be careful in using nonpattern instructions, unless the court determines the pattern instructions misstate the law, "because such a practice would defeat the goal that all instructions be simple, brief, impartial and free from argument." (Internal quotation marks omitted.) *People v. Ramey*, 151 Ill. 2d 498, 535-36 (1992). It remains in the court's discretion, however, to provide a nonpattern instruction where it accurately states the law. *Id.* at 536. Because we find the instruction here does not accurately state the law, the court abused its discretion.

¶ 60	The required question for an aggravated battery under section 3.05(c) "is whether the area where the offense occurred is accessible to the public." *Blackburn v. Johnson*, 187 Ill. App. 3d 557, 564 (1989); *People v. Kamp*, 131 Ill. App. 3d 989, 993 (1985); *People v. Ward*, 95 Ill. App. 3d 283, 288 (1981). The definitions of bar and nightclub do not inherently always require accessibility to the public at large. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/bar (last visited June 9, 2021) [https://perma.cc/KKA7-PFRH] (the relevant definition of bar is "a counter at which food or especially alcoholic beverages are served" or "a room or establishment where alcoholic drinks and sometimes food are served"); Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/nightclub (last visited June 9, 2021) [https://perma.cc/F6TU-K8WP] (the relevant definition of nightclub is defined as "a place of entertainment open at night usually serving food and liquor and providing music and space for dancing and often having a floor show"). While we acknowledge many bars and nightclubs are open to the public, some are exclusive and private. See *People v. Logston*, 196 Ill. App. 3d 96, 100 (1990). Moreover, there may be areas in a bar or nightclub that are not accessible to the public. The Illinois Pattern Jury Instructions provide instructions that cover the subject of aggravated battery (Illinois Pattern Jury Instructions, Criminal, Nos. 11.111, 11.112 (approved Apr. 13, 2016)), and further definition was

unnecessary. *Logston*, 196 Ill. App. 3d at 100.

¶ 61                                                     III. CONCLUSION

¶ 62        The trial court erred in allowing the State to elicit testimony regarding defendant's prior bad acts and other crimes to bolster its witness's credibility. Because the evidence in this case was closely balanced, the error amounted to plain error. Accordingly, we reverse defendant's conviction and remand for a new trial.

¶ 63        Reversed and remanded.