NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240785-U

NO. 4-24-0785

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 22, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| TYRONE HOLCOMB, | ) | No. 23CF127 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Harris and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court vacated defendant's convictions of battery and aggravated battery and remanded for a new trial, concluding defendant established ineffective assistance of counsel when counsel failed to object to the admission of irrelevant and extraneous evidence used to show defendant's previous conviction of forgery consisting of (1) four additional charges involving fairly substantial sums of money, (2) a restitution order, (3) an order revoking defendant's conditional discharge, (4) defendant's sentence, and (5) docket entries showing referral to a collection agency.

¶ 2    Defendant, Tyrone Holcomb, appeals his convictions of two counts of misdemeanor battery (720 ILCS 5/12-3(a)(1), (2) (West 2022)), alleging he punched the victim, Latisha Haynes, and two counts of felony aggravated battery (*id.* § 12-3.05(c)), alleging he punched Haynes in the parking lot of a bar, which was a public place of accommodation.

¶ 3    At trial, a police officer opined, without objection from defense counsel, that the incident occurred in the parking lot of a bar, which was a public place of accommodation. The trial

court instructed the jury that a bar was a public place of accommodation. In addition, the State was allowed to impeach defendant, without objection from counsel, using a prior forgery conviction. To prove the conviction, the State entered multiple documents into evidence, including (1) an information consisting of four additional charges involving fairly substantial sums of money, (2) a restitution order, (3) an order revoking defendant's conditional discharge, (4) defendant's sentence, and (5) all of the docket entries in the case, including an entry showing a collection agency referral.

¶ 4        On appeal, defendant argues, under principles of plain error and ineffective assistance of counsel, that (1) the trial court allowed improper opinion testimony regarding whether the bar was a public place of accommodation, (2) the court erred in instructing the jury that a bar was a public place of accommodation, and (3) counsel rendered ineffective assistance by failing to object to multiple irrelevant and prejudicial documents being presented to show his forgery conviction.

¶ 5        We find defendant established ineffective assistance of counsel based on the admission of irrelevant and extraneous evidence used to prove defendant's previous conviction of forgery. Accordingly, we vacate defendant's convictions and remand for a new trial. In anticipation of the issues arising again on retrial, we also note the trial court erred in instructing the jury on the definition of a public place of accommodation, but we need not and do not address whether that error amounted to plain error or ineffective assistance of counsel. We additionally note the State concedes the officer's opinion testimony was improper, but we do not address whether the error amounted to plain error or ineffective assistance of counsel.

¶ 6                        I. BACKGROUND

¶ 7        In May 2023, the State charged defendant with two counts of misdemeanor battery

and two counts of felony aggravated battery based on an altercation between defendant and Haynes in the parking lot of Misty's Bar in Kewanee, Illinois.

¶ 8 Before trial, defendant filed a motion *in limine* seeking to preclude introduction of evidence of his criminal history, including the State's use of prior convictions for impeachment purposes, where the prejudice to defendant outweighed the probative value of the evidence. The trial court granted the motion without objection from the State. However, the State told the court it had a certified conviction of forgery to use against defendant, should he testify.

¶ 9 In February 2024, a jury trial was held. Haynes testified that, on May 6, 2023, she was drinking alcohol at a friend's house before going to Misty's Bar with a group of friends. She arrived around 9 p.m. and left around 1 a.m. When she left the bar, she saw defendant get into an altercation with her relative, and the mother of defendant's baby, Jasmine Trim. She said she witnessed defendant choke Trim.

¶ 10 Haynes walked over to defendant and Trim and grabbed Trim's forearm with the intent to get Trim to go play cards. She estimated the time defendant was choking Trim to the time she got to Trim was "maybe like ten minutes," or "Less than that, probably." She testified defendant was still choking Trim by the time she got there. She then stated, "He seen that it was me, and he turned around and let her neck go, and he proceeded to hit me." Haynes testified defendant hit her three times, including hitting her face with his fist. Haynes was rendered unconscious. When Haynes regained consciousness, defendant was gone, and she went to the hospital. She suffered a blood clot in her eye and an injured lip from the incident. Haynes testified that, although she had been drinking that night, she had not done so to the point of blacking out, and she relayed everything that she recalled that night to a police officer.

¶ 11 An exhibit was admitted of a photograph of Haynes taken at the hospital showing

Haynes bleeding from the lip. In the copy of the photograph in the record, it is difficult to see any injuries to Haynes's eye. It is possible, but not entirely clear, that one of her cheeks is swollen in the photograph. The record suggests the actual photograph showed a clearer injury to the cheek.

¶ 12       Quanetta Shaw testified she was with Haynes at Misty's Bar and estimated the group left the bar around 12:30 a.m. When they were leaving, defendant approached them to try to talk to Trim. He spoke to Trim and then threw her to the ground, choking and hitting her. Shaw testified Haynes and another woman in the group then ran up and tried to grab Trim. Shaw stated defendant turned around and saw Haynes and "swung [at] her" multiple times until she fell and hit the ground. Shaw testified defendant also kicked Haynes. Shaw and another woman tried to help Haynes up, and defendant "was still trying to fight her." Defendant then left alone, without Trim, and Shaw took Haynes to the hospital.

¶ 13       Eric Peed, a Kewanee police officer, testified he spoke to Haynes and Shaw at the hospital. Regarding Misty's Bar, the following colloquy occurred:

"Q. [A]re you familiar with Misty's Bar in Kewanee?

A. Yes.

Q. What type of establishment is that?

A. It is a—it's a bar. They also have gambling inside.

Q. And is the bar and parking lot a public place of accommodation?

A. Yes."

Defense counsel did not object.

¶ 14       The State rested, and defense counsel stated defendant would testify. The State said it planned to admit the certified copy of defendant's forgery conviction. Defense counsel said he had no objection, adding, "I believe it's relevant under the statute and allowable in this case."

¶ 15    Trim testified for the defense. She explained she was at Misty's Bar on May 6, 2023. Trim testified she had been at Hayne's house that day and went to the bar that evening. Regarding the incident, Trim stated defendant did not push, kick, or choke her. She testified defendant told her to go home because she was under the influence, and he knew her "limit." She said defendant was telling her it was time to go home to her children. Trim said defendant was in front of her, trying to stop her from moving around him and telling her to get in the car. As Trim was getting closer to the car, Haynes came from across the street and grabbed and hit defendant. Trim then stated defendant "turned around and hit her under the defense of—he didn't even knew it was her. He was just knowing somebody grabbed him." Trim testified defendant hit Haynes once and Haynes fell down. Trim said "everybody in the crowd" tried to get Haynes up, and defendant left "because he already knew, like, she put him in the wrong predicament." Trim did not go to the hospital with Haynes and came to court that day with defendant. She admitted she was drunk both when she got to Misty's Bar and when she left.

¶ 16    Defendant testified he had an argument with Trim about her being drunk. He said the group had been drinking all afternoon and evening. He testified he was trying to get Trim to the car so they could leave, and he blocked her from moving around him. He described his actions as "pushing her toward the car." Defendant said he did not punch, kick, or choke Trim.

¶ 17    Defendant testified that, when Haynes ran up behind him, she grabbed him and would not let go. Defendant said he put his hand against the car, Haynes swung at him, and he "swung back at her." Haynes then fell. Defendant said Haynes swung first, and he did not know who it was because she came up behind him. He did not know it was Haynes until after he turned around. Defendant said he only hit Haynes once in self-defense. Defendant left the scene and did not call the police. Defendant testified he did not drink alcohol and was not drunk that night.

¶ 18    The State's exhibit No. 2 was admitted into evidence, without objection. That exhibit consisted of (1) a certified copy of an information charging five felony counts of forgery, involving forgeries of different check numbers in the amounts of $955, $1,235.83, and three checks each written for $650; (2) a jury waiver and guilty plea form to one count of forgery in the amount of $955; (3) a November 2017 order of conditional discharge, requiring defendant to pay fines and costs, not have contact with the victims, and serve 90 days in the Henry County jail; (4) a restitution order; (5) a petition to revoke the conditional discharge, alleging defendant failed to pay fines and costs; (6) an order of imprisonment; and (7) the docket sheet showing all of the proceedings in the case, including a reference to the appointment of a public defender and referral to a collection agency. The trial court told the jury, "Exhibit 2 is a certified copy of a conviction of the defendant *** for the offense of forgery here in Henry County, in Henry County Case Number 2017 CF 354. That was entered on November 16, 2017."

¶ 19    The State called Haynes and Shaw in rebuttal. Haynes testified she "kind of" remembered defendant trying to talk to Trim inside the bar and Trim did not wish to talk to him. Haynes denied running up and grabbing defendant or hitting him first. She said she went up to Trim to get her to come with the group and that defendant "still had her by the neck" when Haynes went up to Trim. Shaw testified Haynes ran up to Trim and grabbed her arm. She said Haynes never touched defendant.

¶ 20    At the jury instruction conference, the State offered a non-pattern instruction defining a place of public accommodation based on a definition found in the Illinois Human Rights Act (Act) (775 ILCS 5/5-101(A)(2) (West 2022)). That instruction read, " 'Place of public accommodation' includes, but is not limited to a restaurant, bar, or other establishment serving food or drink." The trial court asked defense counsel if there was any objection, and counsel

- 6 -

answered, "No." The instruction was given to the jury. The jury was also instructed that evidence of a defendant's previous conviction may be considered only as it may affect his believability as a witness and not as evidence of his guilt of the offense with which he is charged. The jury was further instructed on self-defense.

¶ 21　　During closing argument, the State argued a place of public accommodation included a bar, and the parking lot belonged to Misty's Bar, thus qualifying it as a place of public accommodation. Defense counsel argued Haynes and Shaw, who had been drinking, did not give fully accurate accounts of what happened and defendant, who had not been drinking, acted in self-defense. Defense counsel also suggested, if the jury could not decide whom to believe, the State failed to prove its case. In rebuttal, the State argued the jury could use defendant's previous conviction to judge his believability as a witness.

¶ 22　　The jury found defendant guilty of all counts. The trial court merged all counts into one count of aggravated battery and sentenced defendant to four years' imprisonment.

¶ 23　　This appeal followed.

¶ 24　　　　　　　　　　　　II. ANALYSIS

¶ 25　　On appeal, defendant contends, under principles of plain error and ineffective assistance of counsel, that (1) the trial court allowed improper opinion testimony regarding whether the bar was a public place of accommodation, (2) the court erred in instructing the jury a bar was a public place of accommodation, and (3) counsel rendered ineffective assistance by failing to object to multiple irrelevant and prejudicial documents providing evidence of his forgery conviction.

¶ 26　　　　　　　A. Documents Related to Defendant's Forgery Conviction

¶ 27　　Defendant argues counsel rendered ineffective assistance by failing to object to the

introduction into evidence of multiple irrelevant and prejudicial documents related to his previous forgery conviction.

¶ 28        Claims of ineffective assistance of counsel are evaluated under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show counsel's performance fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. *Id.* at 687-88. To show prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "[A] 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *People v. Patterson*, 2014 IL 115102, ¶ 81. The failure to establish either prong of the *Strickland* test is fatal to a defendant's claim. *People v. Ceja*, 204 Ill. 2d 332, 358 (2003).

¶ 29        Under, what is often referred to as the "*Montgomery* rule," evidence of a witness's prior criminal conviction is admissible to impeach his or her credibility when: (1) the conviction was for a crime punishable by death or imprisonment for more than one year, or the crime involved dishonesty or a false statement, regardless of punishment; (2) less than 10 years has passed since the date of the conviction or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the conviction outweighs the danger of unfair prejudice. *People v. Montgomery*, 47 Ill. 2d 510, 516-17 (1971). In balancing the probative value of the prior conviction against its potential prejudice, the court should consider factors such as "the nature of the prior conviction, its recency and similarity to the present charge, other circumstances surrounding the prior conviction, and the length of the witness' criminal record." *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999).

¶ 30          Generally, "[t]o impeach a defendant with a prior conviction, the proper method of proof is the introduction of a certified copy of the record of conviction only." *People v. Anderson*, 407 Ill. App. 3d 662, 671 (2011); *People v. Davis*, 54 Ill. App. 3d 517, 525 (1977). However, the Appellate Court, Third District, has held allowable documents to prove a prior conviction may include documents showing the caption, the return of the indictment into open court by the grand jury, the indictment and arraignment of the defendant, the impaneling of the jury and its verdict or the waiver of the jury, and the final judgment of the court. *People v. Moore*, 72 Ill. App. 3d 462, 464 (1979). Regardless, the inclusion of irrelevant evidence, such as the inclusion of criminal charges of which the defendant was not convicted, is surplusage, irrelevant, and erroneous. *Anderson*, 407 Ill. App. 3d at 671-72; *Davis*, 54 Ill. App. 3d at 525. "It is also improper to indicate the sentence the defendant received for a prior conviction, as it is immaterial to the question of a defendant's credibility." *Anderson*, 407 Ill. App. 3d at 672. "The details appearing on the documents necessary to prove the defendant's prior conviction may be so prejudicial that the defendant would be entitled to a new trial." *Id.*

¶ 31          Here, the State concedes defense counsel's performance fell below an objective standard of reasonableness when counsel allowed the admission of the petition to revoke conditional discharge. We agree. In addition, we further find counsel's performance deficient regarding his failure to object to the admission of the information showing (1) multiple felony forgery charges, when defendant pleaded guilty to a sole count, (2) defendant's sentence, (3) the restitution order, and (4) docket entries, including referral to a collection agency.

¶ 32          Where a jury verdict is based on close, conflicting evidence and the outcome of the case depends on the jury's credibility determinations, the introduction of inadmissible evidence of prior arrests may undermine a defendant's credibility such that there is a reasonable probability

the error affected the outcome of the trial. *People v. Valentine*, 299 Ill. App. 3d 1, 4 (1998). See *People v. Sanchez*, 404 Ill. App. 3d 15, 19 (2010) (reversing and remanding for new trial on the basis of ineffective assistance of counsel where the trial involved a credibility contest between a police officer and the defendant, and evidence of the defendant's prior conviction was improperly admitted); see also *People v. Pruitt*, 165 Ill. App. 3d 947, 952-53 (1988) (where the verdict hinged on the jury's determination whether to accept the defendant's version of facts or the State's, improper admission of a prior conviction was prejudicial and required reversal).

¶ 33        The likelihood of prejudice is especially notable in cases such as this, where the evidence amounted to a case of "he said/she said," because the outcome of the case then depended on the jury's credibility determinations. *Valentine*, 299 Ill. App. 3d at 4. In such a case, there is a reasonable probability the error affected the outcome of the trial. *Id.* at 5. Further, even if one assumes defense counsel's actions were part of a trial strategy, the improper admission of prior arrests has still been deemed unduly prejudicial and in error. See *id.* Generally, it is difficult to discern a valid strategic reason for counsel failing to object to improper evidence of previous crimes, and the matter is more likely to be based on a misapprehension of the law. See *Sanchez*, 404 Ill. App. 3d at 18.

¶ 34        Here, the jury improperly learned defendant (1) had been arrested on four additional felony forgery charges involving fairly substantial sums of money, (2) was ordered to pay restitution, (3) had his conditional discharge revoked after he failed pay his fines, (4) was sentenced to a term of incarceration, and (5) had been referred to a collection agency. Because of the lack of an objection, the trial court never addressed the prejudicial effect of the extraneous material connected to defendant's previous conviction of forgery. Indeed, we question whether the court was aware of the extraneous information at all.

¶ 35    Then, the jury's determination in the case depended entirely on its decisions concerning the credibility of the witnesses and was entirely a "he said/she said" case. The testimony of defendant and Trim suggested defendant did not assault Trim but was pushing her toward a car when defendant hit Haynes once in self-defense after she grabbed him. In contrast, the testimony of Haynes and Shaw suggested Haynes intervened in an assault of Trim without touching defendant and defendant hit her multiple times, knowing who she was. While there were certainly credibility issues involving defendant and Trim aside from the erroneously introduced evidence, the State's witnesses also suffered from credibly concerns. Both Haynes and Shaw had been drinking. Meanwhile, there were inconsistencies between Haynes's and Shaw's testimony concerning details about the incident, and defendant notes Haynes's testimony that defendant choked Trim for possibly up to 10 minutes seemed incredulous. The photograph of Haynes at the hospital did not conclusively show injuries consistent with more than one hit to the face, as her injuries could have also occurred when she fell. Defendant also notes the lack of corroborating evidence to support other allegations made by Haynes and Shaw, such as allegations defendant repeatedly kicked Haynes.

¶ 36    Further, when defense counsel stressed credibility as being crucial to the case, the State noted the exhibit in rebuttal and argued defendant's conviction could be used to assess believability. Thus, the jury would have been particularly drawn to the exhibit. Further, the jury was instructed evidence of defendant's previous conviction could be considered, as it might affect his believability, but received no instruction regarding the extraneous information. As a result, the instruction would not have cured the issue that (1) defendant not only had been convicted of one felony count of forgery, but also was also arrested on four more felony counts involving fairly significant sums of money; (2) defendant failed to pay fines and costs, resulting in revocation of

his conditional discharge; and (3) referral of the balance to a collection agency created a reasonable probability the error affected the jury's determination of the case. See *Valentine*, 299 Ill. App. 3d at 4. As such, the admission of the evidence is sufficient to undermine confidence in the outcome, rendering the result unreliable. Thus, we conclude defendant has established prejudice and demonstrated he received ineffective assistance of counsel. Accordingly, we vacate defendant's convictions.

¶ 37                                    B. Public Place of Accommodation

¶ 38          Defendant also argues the trial court erred in instructing the jury that a bar was a public place of accommodation and by allowing improper opinion testimony from Officer Peed regarding whether the bar was a public place of accommodation. We address this issue because of the likelihood it will recur on retrial.

¶ 39          Defendant acknowledges he failed to object at trial or otherwise raise the issue in the trial court but argues either plain error or ineffective assistance of counsel applies.

¶ 40          A defendant's failure to object at trial and to raise the issues in a posttrial motion operates as a forfeiture of the right to raise the issue as a ground for reversal on review. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The plain-error doctrine provides a "narrow and limited exception," allowing courts of review to address forfeited claims. *People v. Reese*, 2017 IL 120011, ¶ 72. Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error where:

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

Under both prongs of the plain-error doctrine, the defendant bears the burden of persuasion. *People v. Wilmington*, 2013 IL 112938, ¶ 43. Forfeited claims may also be addressed as a matter of ineffective assistance of trial counsel.

¶ 41        Jury instructions serve the important purpose of "convey[ing] the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). The trial court's decision to provide an instruction is reviewed for an abuse of discretion. *People v. Choate*, 2018 IL App (5th) 150087, ¶ 23. Under that standard, we must determine whether the instructions, taken as a whole, "fully and fairly announce the law applicable to the theories of the State and the defense." *Mohr*, 228 Ill. 2d at 65. A court abuses its discretion if the instructions fail to accurately state the law or where the instructions "relieve the State of its burden of proving any element of the charge beyond a reasonable doubt." *Choate*, 2018 IL App (5th) 150087, ¶ 23.

¶ 42        Trial courts should be careful in using nonpattern instructions, unless the court determines the pattern instructions misstate the law, "because such a practice would defeat the goal that all instructions be simple, brief, impartial and free from argument." (Internal quotation marks omitted.) *People v. Ramey*, 151 Ill. 2d 498, 535-36 (1992). It remains in the court's discretion, however, to provide a nonpattern instruction where it accurately states the law. *Id.* at 536.

¶ 43        A person commits aggravated battery when, "in committing a battery, other than by the discharge of a firearm, he or she is or the person battered is on or about a public way, public property, [or] a public place of accommodation or amusement." 720 ILCS 5/12-3.05(c) (West

2022). Here, the State alleged defendant committed aggravated battery by committing a battery in the parking lot of Misty's Bar, a place of public accommodation.

¶ 44    We first observe section 5-101 of the Act states the terms defined in the Act including a "place of public accommodation," are "applicable strictly in the context of this Article." 775 ILCS 5/5-101 (West 2022). "This limiting language demonstrates the legislature's intention to restrict the applicability of this section to the [Act]." *People v. Snelling*, 2021 IL App (1st) 200293-U, ¶ 22. Thus, the Act does not provide guidance. *Id.*

¶ 45    The aggravated battery statute does not define "public place of accommodation." However, the consensus among our appellate court districts is the term is broadly interpreted to mean "the battery occurred in a public area." *People v. Ward*, 95 Ill. App. 3d 283, 287 (1981). In addition, whether the property was actually publicly owned and, therefore, public property, rather than a privately owned public place of accommodation, is irrelevant. Instead, what is significant is whether the alleged offense occurred in an area accessible to the public. *Id.* at 287-88; see *People v. Crawford*, 2021 IL App (5th) 170496, ¶ 60 (holding the required question for an aggravated battery under section 12-3.05(c) is whether the area where the offense occurred is accessible to the public); *People v. Brown*, 2019 IL App (1st) 161204, ¶ 49 (noting that *Ward* "broadly construed the statutory language to encompass any battery committed in a public area"); *People v. Murphy*, 145 Ill. App. 3d 813, 815 (1986) ("[T]he terms 'place of public accommodation or amusement' seem to apply generically to places where the public is invited to come into and partake of whatever is being offered therein.").

¶ 46    Such a broad interpretation was informed by the legislative purpose behind the situs enhancement language. The legislature was of the belief a battery committed in an area open to the public, whether it be a public way, public property, or public place of accommodation or

- 14 -

amusement, constitutes a more serious threat to the community than a battery committed elsewhere. *People v. Foster*, 2022 IL App (2d) 200098, ¶ 44; *Ward*, 95 Ill. App. 3d at 287. In light of that purpose, the appellate court has also held the term applies to a battery occurring in a parking lot "immediately outside" a public place of accommodation. *People v. Lee*, 158 Ill. App. 3d 1032, 1036 (1987); *People v. Pergeson*, 347 Ill. App. 3d 991, 994 (2004).

¶ 47        Recently, our supreme court rejected the notion that accessibility to the public, standing alone, is sufficient to prove a place of public accommodation. *People v. Whitehead*, 2023 IL 128051, ¶ 32. There, the court determined the stoop of a private residence was not a place of public accommodation merely because it was accessible to the public. Instead, the court held, "The purpose of the stoop is for the owner or resident of the private dwelling to access his or her home," and the "fact that certain members of the public may access it is secondary to the purpose of the stoop." *Id.* ¶ 22. Thus, "[t]he stoop in front of a private dwelling—even if that stoop is shared by a neighbor—hardly constitutes a public place." *Id.* ¶ 24. The court reasoned that "expanding the definition of 'public place of accommodation' to include the stoop, step, or small walkway in front of a private home would amount to an absurd or unjust result." *Id.* Moreover, the court noted, "public accessibility, alone, is insufficient to transform a stoop, step, or walkway into a 'place of public accommodation.' " *Id.* ¶ 25.

¶ 48        As part of its reasoning, the court held a " 'public place of accommodation or amusement' is a place for the use of the general public that is supplied for convenience, to satisfy a need, or to provide pleasure or entertainment." *Id.* ¶ 21. The court further held, "[A] 'public place of accommodation or amusement,' at minimum, must refer to a place that is not only accessible to the public but is also a place where the general public is invited to enjoy a good, service, or accommodation being provided." *Id.* ¶ 25.

¶ 49  In regard to bars, we have held a statement in a nonpattern instruction stating "a tavern is a public place of amusement" is an incorrect statement of law. *People v. Logston*, 196 Ill. App. 3d 96, 100 (1990). There, we stated:

> "A 'tavern' is 'an establishment where alcoholic beverages are sold to be drunk on the premises.' " (Webster's Ninth New Collegiate Dictionary 1209 (1983).) Such an establishment does not necessarily give the necessary access to the public to qualify as 'a place of public amusement.' It could be a very private, exclusive club house. Moreover, no precedent for such an instruction exists in the Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d). Various definition of terms instructions are listed. (IPI Criminal 2d Nos. 4.01 through 4.18.) Most instructions listed there concern statutory definitions. Instructions not based upon IPI Criminal 2d should be drafted with great care. Here, no definition to explain the meaning of the statute was necessary." *Id.*

¶ 50  *Crawford* is also instructive. There, the defendant was convicted of aggravated battery based on striking the victim on the head with a beer bottle "at Los Amigos Bar, a public place of accommodation." *Crawford*, 2021 IL App (5th) 170496, ¶ 4. On appeal, the defendant argued the bar was not a public place of accommodation and the trial court erred in instructing the jury with a nonpattern instruction, which stated, "[T]he term public place of accommodation or amusement includes places where the public is invited to come into and partake of whatever is being offering therein, including without limitation bars and nightclubs." (Internal quotation marks omitted.) *Id.* ¶¶ 54-55. The defendant argued the instruction created an unconstitutional mandatory presumption because it required the jury to find any bar was a public place of accommodation.

¶ 51  The *Crawford* court noted the operative question was whether the location of the

offense was accessible to the public, and bars and nightclubs "do not inherently always require accessibility to the public at large." *Id.* ¶ 60. Although many bars and nightclubs are open to the public, some are private, and even in those establishments that are open to the public, there may be areas that are not accessible to the public. *Id.*; see *Snelling*, 2021 IL App (1st) 200293-U, ¶¶ 29-31 (adopting the reasoning of *Crawford*). The court ultimately found the Illinois Pattern Jury Instructions provide instructions covering the subject of aggravated battery and further definition was unnecessary. *Crawford*, 2021 IL App (5th) 170496, ¶ 60 (citing *Logston*, 196 Ill. App. 3d at 100).

¶ 52    Here, as in *Logston* and *Crawford*, the definition of a place of public accommodation as a bar was not a correct statement of law. Providing such an instruction impermissibly required the jury to find Misty's Bar was a place of public accommodation without requiring the State to prove Misty's Bar and parking lot were actually open to the public on the night of the incident. As such, the instruction was legally incorrect.

¶ 53    The State argues *Whitehead*, which was decided after *Crawford*, dictates a different result and suggests the *Whitehead* court created a presumption that bars are places of public accommodation. We disagree. As previously noted, the *Whitehead* court held, "[A] 'public place of accommodation or amusement,' at minimum, must refer to a place that is not only accessible to the public *but is also a place where the general public is invited* to enjoy a good, service, or accommodation being provided." (Emphasis added.) *Whitehead*, 2023 IL 128051, ¶ 25. This holding is consistent with *Crawford* and *Logston* because the State still must show the establishment was open to the public instead of being a private club or hosting a private event. Here, while one could certainly infer Misty's Bar was open to the public, the jury was never given an instruction that would allow them to make that inference. Instead, the jury was wrongly

instructed that, as a bar, Misty's Bar was presumptively a place of public accommodation.

¶ 54     Having addressed the issue solely for purposes of advising the parties and the trial court in the event of a retrial, and because we have vacated defendant's convictions based on ineffective assistance of counsel, we need not determine whether the error in instructing the jury amounted to plain error or ineffective assistance of counsel.

¶ 55                    C. Defendant's Other Claims of Error

¶ 56     Further, we also do not address defendant's alternate argument the trial court erred by allowing Peed to provide opinion testimony that Misty's Bar was a bar. We note the State concedes Peed's opinion was beyond the scope of what could be considered lay witness testimony and instead argues defendant forfeited plain-error review of the issue via trial strategy or invited error. We caution the parties to ensure that proper foundation for any opinions is provided on retrial and that instructions correctly stating the law are given.

¶ 57     We also note, were we to determine the error in the jury instruction was plain error, it would raise an issue of double jeopardy, under which we would need to decide whether defendant was entitled to an outright reversal or simply a new trial because the instruction concerned an essential element of the crime. See *People v. McKee*, 2022 IL App (2d) 210624, ¶ 42. In such a case, "[d]efendant would be entitled to an outright reversal if the State had not proved him guilty beyond a reasonable doubt, such that a retrial would constitute double jeopardy." *Id.* Here, however, defendant does not argue the evidence was insufficient, and he specifically asks for a retrial. " 'It is firmly established that the constitutional right to not be twice put in jeopardy for the same offense is a personal privilege which may be forfeited.' " *Id.* (quoting *People v. Bannister*, 378 Ill. App. 3d 19, 29 (2007)). "The right is forfeited when the defendant seeks and obtains a new trial." *Id.* Thus, in asking for a new trial, defendant has forfeited any double jeopardy

argument. See *id.*; *People v. Morgan*, 2023 IL App (4th) 220850-U, ¶ 27.

¶ 58                                 III. CONCLUSION

¶ 59        For the reasons stated, we vacate defendant's battery and aggravated battery convictions and remand for a new trial.

¶ 60        Vacated and remanded.