2021 IL App (1st) 200293-U

No. 1-20-0293

Order filed November 5, 2021

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11797 |
| | ) | |
| TITUS SNELLING, | ) | Honorable |
| | ) | Neera Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Pierce and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because the evidence at trial was insufficient to prove beyond a reasonable doubt that defendant was on or about a place of public accommodation when he committed a battery, his conviction for aggravated criminal sexual abuse predicated on aggravated battery must be reduced to criminal sexual abuse. Additionally, sentences on the reduced criminal sexual abuse conviction and defendant's remaining conviction for aggravated criminal sexual abuse cannot stand and must be vacated pursuant to the one-act, one-crime rule.

¶ 2    Following a bench trial, defendant Titus Snelling was found guilty of four counts of aggravated kidnapping, two counts of aggravated criminal sexual abuse, and one count of aggravated battery. After merging the aggravated kidnapping and aggravated battery counts, the trial court imposed concurrent prison terms of 10 years for aggravated kidnapping predicated on criminal sexual abuse (count I), 4 years for aggravated criminal sexual abuse predicated on kidnapping (count V), and 4 years for aggravated criminal sexual abuse predicated on aggravated battery (count VI).

¶ 3    On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt of aggravated criminal sexual abuse predicated on aggravated battery (count VI) because the location of the incident, Jackson Park Hospital, does not qualify as a "public place of accommodation" under section 12-3.05(c) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(c) (West 2016)). He therefore argues that this conviction must be reduced to criminal sexual abuse and then vacated pursuant to the one-act, one crime rule when it is based upon the same act as his conviction for aggravated kidnapping predicated on criminal sexual abuse (count I). Defendant further contends that his conviction for aggravated criminal sexual abuse predicated on kidnapping (count V) must be vacated pursuant to the one-act, one-crime rule as a lesser-included offense of aggravated kidnapping predicated on criminal sexual abuse (count I). We affirm in part and vacate in part.

¶ 4    Defendant was charged by indictment with four counts of aggravated kidnapping, two counts of aggravated criminal sexual abuse, and one count of aggravated battery.

¶ 5    Relevant here, count I for aggravated kidnapping alleged that defendant knowingly and secretly confined M.B.-F. against her will while committing criminal sexual abuse. 720 ILCS 5/10-

2(a)(3) (West 2016). Count V for aggravated criminal sexual abuse alleged that defendant knowingly touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force during a kidnapping. 720 ILCS 5/11-1.60(a)(6) (West 2016). Count VI for aggravated criminal sexual abuse alleged that defendant touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force while committing an aggravated battery. 720 ILCS 5/11-1.60(a)(6) (West 2016). Count VII for aggravated battery alleged that, while committing a battery, defendant knowingly made physical contact of an insulting or provoking nature by placing his mouth on M.B.-F.'s toes while they were inside Jackson Park Hospital, a public place of accommodation. 720 ILCS 5/12-3.05(c) (West 2016).

¶ 6     Prior to trial, the State filed a motion to admit proof of other crimes. The motion alleged that in the instant case, defendant, a nurse technician at Jackson Park Hospital, was assigned to transport M.B.-F. to her room on February 9, 2017. He pushed her wheelchair to an unused part of the hospital, touched her vagina over her underwear, removed her socks, and sucked her toes. Additionally, in October 2016, defendant was assigned to transport A.N. to her room. Defendant pushed A.N.'s wheelchair into an elevator where he made sexual and flirtatious comments and kissed her neck. After A.N. told him to stop, defendant responded, " 'don't worry, I know where you are, I can come back.' " The trial court granted the motion, finding the other crimes evidence was close in time and factually similar to the charged offense, and that its probative value outweighed potential prejudice.

¶ 7     M.B.-F. testified that in January 2011 she was diagnosed with a brain tumor. She underwent gamma knife radiation and was prescribed "a lot of opiates." When her prescriptions

ended, she obtained pills from friends and began to use heroin. In February 2017, she decided to go to the detox center at Jackson Park Hospital.

¶ 8    M.B.-F. arrived at the emergency room between 7 and 8 p.m. on February 8, 2017, and was placed in a waiting room. Defendant, whom she identified at trial, brought her a hospital gown and socks and told her to remove her clothing and don the gown. M.B.-F. complied, but kept her underwear on. M.B.-F. was "fully sober," but sick from withdrawal symptoms and asked when she would go to the detox floor. Defendant entered the waiting area several times, squeezed her toes, and said she would be going soon. Eventually, defendant pushed M.B.-F. away in a wheelchair as she held her purse and a pink bag.

¶ 9    Defendant transported M.B-F. through hallways and elevators for a "very extended period of time" and wheeled her into a "pitch black" room. After the door closed, M.B.-F. could not see anything, but heard defendant's movement and breath and asked him to turn on the light. She then felt his hand go up her left thigh. She squeezed her legs together and pushed her possessions forward. Defendant next touched the outside of her panties. M.B.-F. said no, and that she was married and not interested. Defendant grabbed her ankle "firmly," "ripped" off her sock, and sucked and kissed her toes. She asked to go to her room, and said she was feeling sick and would not say anything. Defendant responded, "are you sure" or "you better not." He pushed her onto an elevator where he ran his fingers up and down her neck. When the elevator opened, defendant pushed her to a nurse's desk and left. M.B.-F. tried to stand, but fell and "blurt[ed]" what happened. She spoke to police and later identified defendant in a photographic array. M.B.-F. did not give defendant permission to remove her sock or touch her.

¶ 10    The State entered a stipulation to the foundation for a surveillance video for Jackson Park Hospital and published the video, which is included in the record on appeal. M.B.-F. identified herself and defendant in the video, which shows defendant pushing M.B.-F. in a wheelchair through different hallways. M.B.-F. has a large pink bag on her lap.

¶ 11    During cross-examination, M.B.-F. testified that she was prescribed opiates for approximately three years. M.B.-F. last used heroin the evening before or the morning of February 8, 2017. She found the toe squeezes in the waiting room "endearing," like defendant was telling her to "hang on, *** it's almost your turn." Once inside the dark room, she could not see defendant and did not know if anyone else was present. When she asked why defendant did not turn on the lights, he said it was 3 a.m.

¶ 12    Registered nurse Katherine Raymundo testified that early on February 9, 2017, she was working with detox patients. M.B.-F., who was nervous and shaking, said that during her transfer to the unit, she was "molested" when her toes were sucked and legs felt up. Defendant transported M.B.-F. During cross-examination, Raymundo testified that nervousness and shaking were symptoms of opiate withdrawal, as were aches and pains, nausea, and memory loss.

¶ 13    A.N. testified that she went to Jackson Park Hospital around October 21, 2016, for alcohol detox, and defendant pushed her wheelchair to a room. When defendant and A.N. were alone in an elevator, he massaged her shoulders, neck, and down toward her chest. Defendant then kissed her neck. She asked him to stop, and defendant responded that he was "just trying to get [her] to relax." After exiting the elevator, defendant pushed the wheelchair slowly and continued to massage her shoulders. After entering a room, defendant said he would return. A.N. asked for his name, and defendant identified himself as Titus. She then contacted a nurse.

¶ 14    During cross-examination, A.N. acknowledged being under the influence of alcohol when she arrived at the hospital, and that during her 20-year history with alcohol, she suffered from blackouts and memory issues. When defendant said he would return, she took it as a threat and felt "very uncomfortable."

¶ 15    Jackson Park Hospital risk manager Mark Parrish testified that on February 9, 2017, he spoke with M.B.-F. and reviewed surveillance video. The video was published, and Parrish noted that, after exiting an elevator, defendant pushed M.B.-F. away from the detox unit toward an area closed to patients. During cross-examination, Parrish testified that defendant's job was to transport patients by wheelchair.

¶ 16    The defense moved for a directed finding, arguing, relevant here, that no evidence showed that Jackson Park Hospital was a place of public accommodation as defined by statute. The court denied the motion.

¶ 17    After argument, the trial court found defendant guilty of all counts. The trial court rejected defendant's argument that Jackson Park Hospital was not a place of public accommodation because that would mean that only places with "public type funding" qualified. Defendant moved for a new trial, again arguing that the hospital was not a place of public accommodation. The trial court denied the motion, finding that hospitals are places of public accommodation although they are not specifically listed in the statute.

¶ 18    At sentencing, the trial court merged the aggravated kidnapping counts and sentenced defendant to 10 years on count I. The court also merged the aggravated battery count into the other counts, and imposed two four-year sentences for aggravated criminal sexual abuse under counts V and VI. All sentences were concurrent.

¶ 19    On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt of count VI for aggravated criminal sexual abuse predicated on aggravated battery because Jackson Park Hospital is not a "place of public accommodation." He further argues that absent this aggravating factor, the conviction must be reduced to criminal sexual abuse and vacated pursuant to the one-act, one-crime rule when it rests upon the same physical act as his conviction for aggravated kidnapping predicated on criminal sexual abuse (count I).

¶ 20    Where a defendant challenges a criminal conviction based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the State, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *People v. Brown*, 2013 IL 114196, ¶ 48. In such cases, "a criminal conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.* However, when the defendant's challenge to the sufficiency of the evidence does not attack the credibility of the witnesses, and instead, questions whether the uncontested facts were sufficient to prove the elements of the crime, our review is *de novo*. *People v. Smith*, 191 Ill. 2d 408, 411 (2000).

¶ 21    In the case at bar, defendant contends the facts are undisputed and therefore requests *de novo* review. He does not dispute that he committed a battery at Jackson Park Hospital; rather he contends that a closed ward located inside Jackson Park Hospital does not qualify as a "public place of accommodation" under the aggravated battery statute.

¶ 22    Although the State agrees the aggravated battery statute does not define a "place of public accommodation," the State argues that the term applies "generically" to places where the public is invited to enter and partake of services. The State also notes that hospitals and the professional

offices of healthcare providers are included as "place[s] of public accommodation" in the Illinois Human Rights Act (775 ILCS 5/5-101(a)(6) (West 2016)). The State therefore concludes that the trial court properly found that Jackson Park Hospital was a "place of public accommodation" within the meaning of the statute.

¶ 23    At the outset, we observe that section 5-101 of the Illinois Human Rights Act states that the terms defined therein, including a "place of public accommodation," are "*applicable strictly* in the context of this Article." (Emphasis added.) 775 ILCS 5/5-101 (West 2016). This limiting language demonstrates the legislature's intention to restrict the applicability of this section to the Illinois Human Rights Act. See *In re D.F.*, 208 Ill. 2d 223, 229 (2003) (the most reliable indicator of legislative intent is the language of the statute, which is to be given its plain and ordinary meaning). Thus, we do not rely on the Illinois Human Rights Act for guidance.

¶ 24    Here, the facts are not in dispute; rather the only question is whether Jackson Park Hospital qualifies as a "place of public accommodation" within the meaning of the aggravated battery statute. Where review of the evidence turns on "statutory interpretation, our review is *de novo*." *People v. Martin*, 2011 IL 109102, ¶ 20.

¶ 25    Defendant was convicted under count VI of aggravated criminal sexual abuse based upon aggravated battery. Count VII, the sole aggravated battery count, alleged that, while committing a battery, defendant knowingly made physical contact of an insulting or provoking nature by placing his mouth on M.B.-F.'s toes while they were inside Jackson Park Hospital, a public place of accommodation. Therefore, to sustain the aggravated battery charge upon which the aggravated criminal sexual abuse charge was based, the State was required to establish that defendant

committed a battery and that the offense occurred at "a public place of accommodation." 720 ILCS 5/12-3.05(c) (West 2016).

¶ 26    This court has previously determined that a place of public accommodation is a place open or accessible to the public. *People v. Ward*, 95 Ill. App. 3d 283, 287-88 (1981) (interpreting the language of the aggravated battery statute and finding that the "essential allegation *** is that the battery occurred in a public area"). As we explained*,* whether "the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." [1] *Id.*; see also *People v. Williams*, 161 Ill. App. 3d 613, 619-20 (1987) (aggravated battery statute applied to an offense occurring in a private parking lot because the lot was accessible to the public and, therefore, a public way); *People v. Kamp*, 131 Ill. App. 3d 989, 993 (1985) (a park open to the public, regardless of ownership, constituted a public way or property for purposes of the aggravated battery statute). Thus, because the "essence" of the aggravated battery statute is that the battery "occurred in a public area," the operative question is "whether the area where the offense occurred is accessible to the public." *Blackburn v. Johnson*, 187 Ill. App. 3d 557, 564 (1989).

¶ 27    Here, M.B.-F. testified that she arrived at the emergency room and was placed in a waiting room. Defendant thereafter pushed her in a wheelchair through hallways and elevators, and into a dark room where he molested her. Afterwards, defendant pushed her out of the room, onto an elevator, and left her at a nurse's desk. Parrish testified that the surveillance video showed

---

[1] In full, the relevant section of the aggravated battery statute provides: "A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she is or the person battered is on or about a public way, public property, a public place of accommodation or amusement, a sports venue, or a domestic violence shelter." See 720 ILCS 5/12-3.05(c) (West 2016).

defendant pushing M.B.-F. toward a ward that was closed to patients. No evidence in the record supports the inference that the location where the battery occurred, a hospital ward closed to patients, was open and accessible to the public, and therefore, a place of public accommodation.

¶ 28 The State argues that Jackson Park Hospital exists for the "public purpose of providing medical care to those within the community that sought it," and because M.B.-F. could freely enter the hospital to partake of its services, "the hospital, as a whole," was a place of public accommodation.

¶ 29 *People v. Crawford*, 2021 IL App (5th) 170496, is instructive. In that case, the defendant was convicted of aggravated battery based upon striking the victim in the back of the head with a beer bottle "at Los Amigos Bar, a public place of accommodation." *Id.* ¶4. On appeal, the defendant argued, relevant here, that the bar was not a public place of accommodation and the trial court therefore erred in instructing the jury with a non-pattern instruction stating that "the term public place of accommodation or amusement includes places where the public is invited to come into and partake of whatever is being offering therein, including without limitation bars and nightclubs." (Internal quotation marks omitted.) *Id.* ¶¶ 54-55.

¶ 30 We noted that the operative question for a conviction under section 3.05(c) of the aggravated battery statute was whether the location of the offense was accessible to the public, and that bars and nightclubs "do not inherently always require accessibility to the public at large." *Id.* ¶ 60. In other words, although many bars and nightclubs are open to the public, some are private, and even in those establishments that are open to the public, "there may be areas *** that are not accessible to the public." *Id.*; see also *People v. Torres*, 144 Ill. App. 3d 187, 190 (1986) (noting in the context of a fourth amendment case that "an emergency room is not open to the general

public in the sense that anyone may wander through," and that access to an emergency room by anyone other than those seeking treatment may be controlled by medical personnel).

¶ 31    Thus, even assuming that parts of Jackson Park Hospital may have been open to the general public, it does not follow that as a matter of law, a closed ward situated beyond the emergency room was available to the general public for purposes of the aggravated battery statute. Moreover, no evidence in the record shows that the area where the battery occurred, a closed ward on the third floor of Jackson Park Hospital, was open and accessible to the public as a place of public accommodation.

¶ 32    Because there is insufficient evidence in the record that the closed ward was open and accessible to the public, a necessary element of aggravated battery as charged, defendant's conviction for aggravated criminal sexual abuse predicated on aggravated battery under count VI must be reduced to criminal sexual abuse.

¶ 33    Defendant further contends that the now-reduced conviction for criminal sexual abuse under count VI must be vacated under the one-act, one-crime rule because it is based upon the same conduct as his conviction for aggravated kidnapping predicated on criminal sexual abuse under count I, namely, touching M.B.-F.'s sex organ.

¶ 34    Pursuant to the one-act, one-crime doctrine, multiple convictions are improper if they are "based on precisely the same act." *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66. However, multiple convictions are proper "where a defendant has committed several acts, despite the interrelationship of those acts." *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. When analyzing one-act, one-crime issues, we first determine "whether a

defendant's conduct consisted of separate acts or a single physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the defendant committed multiple acts, the court then determines whether any offenses are lesser-included offenses. *Id.*

¶ 35 To determine whether one offense is a lesser-included offense of another, we apply the abstract elements approach. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 13. "This approach requires the court to examine the statutory elements of the two offenses." *Id.* " 'If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second.' " *Id.* (quoting *People v. Miller*, 238 Ill. 2d 161, 166 (2010)). "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Id.* If an offense is a lesser-included offense, then multiple convictions are improper. *Id.* ¶ 12. Whether a violation of the one-act, one-crime rule has occurred is a question of law, which we review *de novo*. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 63.

¶ 36 Here, defendant committed multiple acts, and, therefore, we must consider whether any offenses are lesser-included offenses. Relevant here, count I for aggravated kidnapping alleged that defendant knowingly and secretly confined M.B.-F. against her will and committed criminal sexual abuse. 720 ILCS 5/10-2(a)(3) (West 2016). Count V for aggravated criminal sexual abuse alleged that defendant knowingly touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force during a kidnapping. 720 ILCS 5/11-1.60(a)(6) (West 2016). Count VI, as originally charged, alleged that defendant committed aggravated criminal sexual abuse when he touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force while committing an aggravated battery. 720 ILCS 5/11-1.60(a)(6) (West 2016). Thus, the

conduct described in all three counts rested on the same physical act, the touching of M.B.-F.'s sex organ for sexual arousal or gratification. As discussed, however, count VI must be reduced to criminal sexual abuse, that is, defendant knowingly committed an act of sexual conduct upon M.B.-F. by touching her sex organ for sexual arousal or gratification by using or threatening force. 720 ILCS 5/11-1.50(a)(1) (West 2016).

¶ 37    Here, the elements of defendant's now-reduced conviction for criminal sexual abuse are also included in his conviction for aggravated kidnapping under count I. That is, defendant knowingly committed an act of sexual conduct upon M.B.-F. by (1) touching his hand to her sex organ for sexual arousal or gratification, and (2) using force, and each element is included in his conviction for aggravated kidnapping under count I. Thus, aggravated kidnapping under count I contains the elements of kidnapping plus the elements of the reduced offense of criminal sexual abuse under count VI. Consequently, both counts rest upon the same physical act of defendant touching M.B.-F.'s sex organ. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66 (multiple convictions are improper if they are "based on precisely the same act").

¶ 38    Moreover, because count I includes all of the elements of count VI plus the additional element of kidnapping, count VI is a lesser-included offense. In other words, because defendant could not commit aggravated kidnapping as charged without committing a kidnapping and criminal sexual abuse, his now-reduced conviction for criminal sexual abuse is a lesser-included offense of aggravated kidnapping. See *Reveles-Cordova*, 2020 IL 124797, ¶ 13 (an offense is deemed a lesser-included offense of another when it is "impossible to commit the greater offense without necessarily committing the lesser offense").

¶ 39    Having found that defendant's convictions violate the one-act, one-crime rule, we must determine which offense is the most serious (*People v. Artis*, 232 Ill. 2d 156, 170 (2009)), as "judgment and sentence may be entered only on the most serious offense" (*People v. Smith*, 233 Ill. 2d 1, 20 (2009)). To determine the most serious offense, we compare their relative punishments. *Artis*, 232 Ill. 2d at 170.

¶ 40    As charged, aggravated kidnapping is a Class X felony (720 ILCS 5/10-2(a)(3), (b) (West 2016)) with a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2016)). Criminal sexual abuse is a Class 4 felony (720 ILCS 5/11-1.50(a)(1), (d) (West 2016)) with a sentencing range of one to four years in prison (730 ILCS 5/5-4.5-45(a) (West 2016)). Consequently, the less serious sentence on count VI cannot stand, and must be vacated.

¶ 41    Defendant finally contends his remaining conviction for aggravated criminal sexual abuse predicated on kidnapping under count V must be vacated pursuant to the one-act, one-crime rule as a lesser-included offense of aggravated kidnapping predicated on criminal sexual abuse under count I. Defendant acknowledges he failed to preserve this issue by not raising it before the trial court. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). However, he asks this court to review his claim pursuant to the plain error doctrine.

¶ 42    Under the plain error doctrine, this court may review unpreserved error when an error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation

marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). A violation of the one-act, one-crime rule constitutes second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 43    Defendant contends that because aggravated kidnapping predicated on criminal sexual abuse and aggravated criminal sexual abuse predicated on kidnapping share the same elements, he cannot be sentenced for both offenses and his sentence for the latter must be vacated.

¶ 44    Defendant was charged with aggravated kidnapping under count I in that he knowingly and secretly confined M.B.-F. against her will and committed criminal sexual abuse (720 ILCS 5/10-2(a)(3) (West 2016)), and aggravated criminal sexual abuse under count V for knowingly touching M.B.-F.'s sex organ for sexual arousal or gratification during a kidnapping (720 ILCS 5/11-1.60(a)(6) (West 2016)).

¶ 45    While the complained-of offenses involved multiple physical acts, we agree with defendant that these offenses share the same elements. As discussed, the elements of aggravated kidnapping under count I were that defendant committed a kidnapping and criminal sexual abuse, and the elements of aggravated criminal sexual abuse under count V were that defendant committed criminal sexual abuse during a kidnapping. Additionally, the criminal sexual abuse alleged in counts I and V was based upon the same physical act, *i.e.*, defendant touched M.B-F.'s sex organ. Accordingly, under the abstract elements approach, defendant's conviction for aggravated criminal sexual abuse under count V shares the same elements as his aggravated kidnapping conviction under count I, and his convictions on those two counts violate the one-act, one-crime rule. See *Miller*, 238 Ill. 2d at 166.

¶ 46    The State, however, contends that convictions for aggravated kidnapping predicated on criminal sexual abuse and aggravated criminal sexual abuse predicated on kidnapping can stand

because the facts supporting defendant's asportation of M.B.-F. were neither inherent nor incidental to the criminal sexual assault.

¶ 47    The Code defines kidnapping as:

"(a) A person commits the offense of kidnapping when he or she knowingly:

(1) and secretly confines another against his or her will;

(2) by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her will; or

(3) by deceit or enticement induces another to go from one place to another with intent secretly to confine that other person against his or her will." 720 ILCS 5/10-1(a) (West 2016).

¶ 48    A defendant thus commits kidnapping by confinement, asportation, or inducement. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009). Here, the State prosecuted defendant under theories of confinement and inducement. Specifically, defendant was charged under counts I and II with aggravated kidnapping in that he knowingly and secretly confined M.B.-F. and committed criminal sexual abuse, and under counts III and IV with aggravated kidnapping in that he knowingly by deceit or enticement induced M.B.-F. to go from one place to another intending to secretly confine her against her will and commit criminal sexual abuse. Accordingly, the State's argument that defendant was charged with kidnapping under an asportation theory and its arguments in support fail.

¶ 49    Having determined that defendant's convictions for aggravated kidnapping predicated on criminal sexual abuse and aggravated criminal sexual abuse predicated on kidnapping share the

same elements under the abstract elements approach, we must vacate the sentence for the less serious offense. *Artis*, 232 Ill. 2d at 170.

¶ 50    As charged, aggravated kidnapping is a Class X felony (720 ILCS 5/10-2(a)(3), (b) (West 2016)) with a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2016)), whereas aggravated criminal sexual abuse is a Class 2 felony (720 ILCS 5/11-1.60(a)(6), (g) (West 2016)) with a sentencing range of 3 to 7 years in prison (730 ILCS 5/5-4.5-35(a) (West 2016)). Thus, aggravated kidnapping is the more serious offense. See *Artis*, 232 Ill. 2d at 170 (when "determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense," as greater punishment is mandated for the more serious offense). Because defendant may only be sentenced on the more serious offense (*id.*), the sentence imposed on aggravated criminal sexual abuse under count V must be vacated.

¶ 51    For the foregoing reasons, we reduce defendant's conviction under count VI to criminal sexual abuse. Additionally, as count VI is a lesser-included offense of count I, and count V shares the same elements as count I under the abstract elements approach, sentences on count V and VI cannot stand and must be vacated pursuant to the one-act, one-crime rule.

¶ 52    Affirmed in part and vacated in part.