2023 IL App (1st) 221050-U

SECOND DIVISION
March 7, 2023

No. 1-22-1050

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 17 CR 11797 |
| TITUS SNELLING, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Neera Lall Walsh, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*: We affirm the circuit court's summary dismissal of the petitioner's *pro se* postconviction petition. The petitioner waived his claim of ineffective assistance of appellate counsel by failing to argue it in his petition. Forfeiture aside, that claim would not succeed on the merits.

¶ 2    The petitioner, Titus Snelling, appeals from the circuit court's summary dismissal of his

*pro se* postconviction petition filed pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-

1 *et seq*. (West 2018)). The petitioner contends that the circuit court erred in dismissing his petition where he stated an arguable claim that his appellate counsel was ineffective for failing to raise a meritorious sufficiency of evidence challenge to his conviction for aggravated kidnapping. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The record before us reveals the following relevant facts and procedural history. In 2017, the petitioner was charged with: (1) four counts of aggravated kidnapping (Counts I through IV); (2) two counts of aggravated criminal sexual abuse (Counts V and VI); and (3) one count of aggravated battery (Count VII), all stemming from allegations that he kidnapped the victim, M.B.-F. while transporting her from the emergency room (ER) to the detox unit in the course of his employment at Jackson Park Hospital.

¶ 5     Relevant to this appeal, Count I for aggravated kidnapping alleged that the petitioner knowingly and secretly confined M.B.-F. against her will while committing criminal sexual abuse. 720 ILCS 5/10-2(a)(3) (West 2016). Count V for aggravated criminal sexual abuse alleged that the petitioner knowingly touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force during a kidnapping. 720 ILCS 5/11-1.60(a)(6) (West 2016). Count VI for aggravated criminal sexual abuse alleged that the petitioner touched M.B.-F.'s sex organ for sexual arousal or gratification by using or threatening force while committing an aggravated battery. 720 ILCS 5/11-1.60(a)(6) (West 2016). Count VII for aggravated battery alleged that, while committing a battery, the petitioner knowingly made physical contact of an insulting or provoking nature by placing his mouth on M.B.-F.'s toes while they were inside Jackson Park Hospital, a public place of accommodation. 720 ILCS 5/12-3.05(c) (West 2016).

¶ 6     The following relevant evidence was adduced at the petitioner's trial. The victim, M.B.-F.

testified that in January 2011 she was diagnosed with a brain tumor and underwent gamma knife radiation, after which she was prescribed "a lot of opiates." When her prescriptions ended, M.B.-F. began to use heroin and obtained pills from her friends. In February 2017, she decided to check herself in at the detox center of Jackson Park Hospital.

¶ 7    M.B.-F. testified that at about 7 and 8 p.m. on February 8, 2017, she arrived at the Jackson Park Hospital ER and was placed in a waiting room. The petitioner, whom she identified at trial, brought her a hospital gown and socks, and told her to remove her clothing and don the gown. M.B.-F. complied but kept her underwear on. The petitioner also went through M.B.-F.'s bags, which she considered normal for someone like her entering addiction treatment. M.B.-F. remained in the waiting for the next several hours. While she was "fully sober" she felt sick with withdrawal symptoms and asked the petitioner when she would be taken to the detox floor. The petitioner entered the waiting numerous times, squeezed her toes, and said she would be going soon.

¶ 8    Eventually, at around 3 a.m., on February 9, 2017, the petitioner came to transport M.B.-F. in a wheelchair to her detox room. He pushed her through hallways and elevators for a "very extended period of time" and then wheeled her into a "pitch black" room. After the door closed, M.B.-F. could not see anything but heard the petitioner's movement and breath. She asked the petitioner to turn on the light, but he remained silent and ignored her. When she unsuccessfully repeated the request several times, she "knew she was in trouble." M.B.-F. testified that she was still sitting in the wheelchair and had her bag on her lap when she felt the petitioner's "hand go between *** and up [her] left thigh." The petitioner then "[t]ouched the outside of [her] panties. Not [her] actual vagina, just the outside of [her] panties." M.B.-F. squeezed her legs together and pushed her possessions forward, and said "No, no, no." The petitioner then "firmly" grabbed her

left ankle, "ripped" off her sock and sucked and kissed her toes.

¶ 9    When asked by the prosecutor whether she ever gave the petitioner permission to touch her, remove her socks, suck her toes, or use his hand to "touch [her] vagina under [her] panties," M.B.-F. responded that she did not.

¶ 10    M.B.-F. further testified that after the petitioner sucked her toes, she "just started saying anything to get out of that room." She told the petitioner that she was sick and pleaded with him to take her to the detox room, promising that she would never say anything to anyone about what he had done. The petitioner responded, "are you sure" or "you better not."

¶ 11    Eventually the petitioner wheeled M.B.-F. out of the dark room and pushed her onto an elevator where he ran his fingers up and down her neck. When the elevator opened, the petitioner wheeled M.B.-F. to a nurse's desk and left. M.B.-F. attempted to stand up but fell, and "blurt[ed]" out what had happened. Later that day, she spoke to the police in the hospital.

¶ 12    A week later, she again spoke to the police at her home and identified the petitioner from a photo array as the person who had molested her.

¶ 13    At trial, M.B.-F. also identified herself and the petitioner on surveillance footage from the hospital, which showed her being pushed in a wheelchair by the petitioner through different hallways, while holding a large bag on her lap.

¶ 14    On cross-examination, M.B.-F. testified that she was prescribed opiates for approximately three years, and that she last used heroin the evening before or the morning of February 8, 2017.

¶ 15    On cross-examination, she also admitted that when the petitioner initially squeezed her toes in the waiting room, she found it "endearing" because she thought the petitioner was telling her to "hang on *** it [was] almost [her] turn."

¶ 16    On cross-examination, M.B.-F. also admitted that once inside the dark room, she could not

see the petitioner and did not know if anyone else was present. She explained, however, that she knew that the petitioner was in the room with her because when she asked him why he would not turn on the lights, he told her that it was 3 a.m.

¶ 17    Registered nurse, Katherine Raymundo, next testified that early on February 9, 2017, she was the charge on the detox unit at Jackson Park Hospital. She stated that M.B.-F., who was nervous and shaking and looked as if she was about to cry, told her that during her transfer from the ER to the detox unit, she was "molested" by the transport worker. M.B.-F. told Raymundo that the worker "suckled on her toes and attempted to—you know, was feeling up her legs while she was in the wheelchair." Raymundo identified the petitioner as the transporter.

¶ 18    On cross-examination, Raymundo acknowledged that nervousness and shaking were symptoms of opiate withdrawal as were aches, pains, nausea, and memory loss.

¶ 19    After Raymundo's testimony, the State presented other crimes evidence. A.N. testified that on October 21, 2016, she went to Jackson Park Hospital for alcohol detox. She identified the petitioner as the person who transported her from the ER to the detox unit. A.N. averred that while the petitioner was transporting her, they ended up alone in an elevator, where the petitioner massaged her shoulders, neck, and down toward her chest. The petitioner then kissed her neck. A.N. told the petitioner to stop, to which the petitioner responded that he was "just trying to get [her] to relax." A.N. further averred that after exiting the elevator, the petitioner pushed the wheelchair slowly and continued to massage her shoulders. After they arrived at A.N.'s room, the petitioner told her he would return, which A.N. took "as a threat." A.N. asked the petitioner for his name and he identified himself as "Titus." After he left, A.N. contacted a nurse and told her what had happened.

¶ 20    On cross-examination, A.N. acknowledged being under the influence of alcohol when she

arrived at the hospital. She also admitted that during her 20-year history with alcohol abuse, she suffered from blackouts and memory loss.

¶ 21 Jackson Park Hospital risk manager Mark Parrish next testified that on February 9, 2017, he spoke with M.B.-F. and reviewed hospital surveillance video. He testified that the surveillance video, which was introduced into evidence, shows the petitioner pushing M.B.-F., who is in a wheelchair, away from the detox unit and toward an area closed to patients.

¶ 22 After the State rested, the petitioner moved for a directed finding. Relevant to this appeal, defense counsel argued that the petitioner's actions of sucking M.B.-F.'s toes and "touching her leg in the manner he did" did not rise to the level of touching, which could be considered an act of criminal sexual abuse, upon which all the charges were premised. The State responded that M.B.-F.'s testimony proved that the petitioner not only touched her leg, but that he moved his hand up from her thigh, touching her vagina over her clothing. The trial court agreed with the State and denied the petitioner's motion.

¶ 23 The petitioner presented no evidence on his own behalf and the parties proceeded with closing arguments.

¶ 24 In closing, the State argued that it had proven all the elements beyond a reasonable doubt and that M.B.-F. was a credible witness. Defense counsel, on the other hand, argued that M.B.-F. was not a credible witness because she had difficulty remembering due to withdrawal symptoms. Defense counsel further argued that there was no physical evidence of the petitioner putting his mouth on the victim's toes, and that touching her leg in the manner in which he did, did not rise to the level necessary to establish criminal sexual abuse.

¶ 25 After hearing arguments, the circuit court found the petitioner guilty of all counts. The court held that M.B.-F. was a credible witness, and found, *inter alia*, that she had testified that the

petitioner took her into a dark room and touched her vaginal area. As the trial judge stated:

> "And at that time, [the petitioner] touched her leg and he moved up to her vaginal area and
> that he touched her on top of her panties, and at some point[,] he ripped off her socks, and
> he sucked her toes. She never consented to any of these. She never agreed to any of these.
> She clearly testified to that."

¶ 26    The petitioner filed a motion for a new trial, arguing, *inter alia*, that the trial judge erred in finding that his alleged conduct towards M.B.-F. was sexual in nature.

¶ 27    After the circuit court denied that motion, the parties proceeded with sentencing. At the sentencing hearing, the circuit court merged the four aggravated battery counts and sentenced the petitioner to ten years' imprisonment on Count I. The court also merged the aggravated battery count (Count VII) into the other counts and sentenced the petitioner to two four-year terms on the two aggravated criminal sexual abuse convictions (Counts V and VI). The court ordered that all the sentences be served concurrently.

¶ 28    The petitioner appealed his conviction and sentence. On appeal, he argued that his convictions for aggravated kidnapping (Count I) and aggravated criminal sexual abuse (Count V) violated the one-act-one crime rule because they were predicated on the same physical acts of kidnapping M.B.-F. and performing criminal sexual acts against her. He therefore urged this court to vacate the lesser included offense. In addition, the petitioner contended that the circuit court erred when it found that Jackson Park Hospital was a public place of accommodation, an element of aggravated battery, which was the predicate felony for his aggravated criminal sexual abuse conviction (Count VI). The petitioner asked this court to reduce his aggravated battery conviction to criminal sexual abuse and to vacate that conviction because criminal sexual abuse was a lesser

included offense of aggravated kidnapping.

¶ 29    On appeal, we agreed and affirmed the petitioner's conviction for aggravated kidnapping (Count I), reduced his aggravated criminal sexual abuse conviction (Count VI) to criminal sexual abuse, and vacated his convictions for aggravated criminal sexual abuse (Counts V and VI). See *People v. Snelling*, 2021 IL App (1st) 200293-U. Accordingly, after his direct appeal was decided, the petitioner remained convicted of only one count of aggravated kidnapping premised on knowingly and secretly confining M.B.-F. against her will while committing criminal sexual abuse against her (Count I). *Id.*

¶ 30    On March 9, 2022, the petitioner filed the instant *pro se* postconviction petition. Therein, he alleged that: (1) he was denied his right to a fair trial because of insufficient evidence; and (2) his trial counsel was ineffective because he failed to adequately cross-examine M.B.-F. during trial. With respect to both, the petitioner argued that "the State did not meet the burden or prove the elements of aggravated kidnapping," and that he was "wrongfully convicted on false testimony and insufficient evidence." In this respect, the petitioner relied on the appellate court's decision in his direct appeal, noting that it found that aggravated kidnapping was predicated on aggravated criminal sexual abuse and aggravated battery, and therefore vacated the aggravated criminal sexual abuse and aggravated battery convictions. The petitioner alleged that as such his aggravated kidnapping conviction should also be vacated.

¶ 31    On April 21, 2022, the circuit court summarily dismissed the petition, finding that the issues raised were frivolous and patently without merit. The circuit court held that the petitioner had forfeited his claim regarding the sufficiency of the evidence because he failed to raise it on direct appeal. The court further found that the petitioner failed to make an arguable claim of ineffective assistance of counsel based on counsel's failure to properly cross-examine M.B.-F.

because the evidence at trial was not closely balanced, and M.B.-F.'s testimony was corroborated by other crimes evidence offered by A.N.

¶ 32    The petitioner now appeals.

¶ 33                                          III. ANALYSIS

¶ 34    On appeal, for the first time, the petitioner contends that the circuit court erred in summarily dismissing his *pro se* postconviction petition because he made an arguable claim of ineffective assistance of appellate counsel based on counsel's failure to raise a sufficiency of evidence challenge to his aggravated kidnapping conviction (Count I). The State initially responds, and the petitioner concedes, that he did not explicitly raise this issue in his postconviction petition. The petitioner nonetheless asserts that "given a liberal construction" his petition raised an arguable basis of ineffective assistance of appellate counsel.

¶ 35    For the following reasons, we disagree with the petitioner, and find that the petition, even when liberally construed in no way raises a claim of ineffective assistance of appellate counsel. Moreover, regardless of forfeiture, we find that in light of the overwhelming evidence of the petitioner's guilt, the petitioner has failed to state an arguable basis for appellate counsel's ineffectiveness.

¶ 36    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et. seq.* (West 2018)) provides a three-step process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction. *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Tate*, 2012 IL 112214, ¶ 8; see also *People v. Walker*, 2015 IL App (1st) 130530, ¶ 11 (citing *People v. Harris*, 224 Ill. 2d 115, 124 (2007)). A proceeding under the Act is a collateral attack on a prior conviction and sentence and is therefore "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994); see *Edwards*, 2012

IL 111711, ¶ 21; *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Accordingly, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are waived. *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Ligon*, 239 Ill. 2d 94, 103 (2010); *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006).

¶ 37    At the first stage of postconviction proceedings, the circuit court is tasked with independently reviewing the petition, and taking the allegations as true, determining whether " 'the petition is frivolous or patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting 725 ILCS 5/122–2.1(a)(2) (West 2006)); see also *Tate*, 2012 IL 112214, ¶ 9. At this stage, the court may not engage in any factual determinations or credibility findings.  See *People v. Plummer*, 344 Ill. App. 3d 1016, 1020 (2003); see also *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Instead, the court may summarily dismiss the petition only if it finds the petition to be frivolous or patently without merit. See *People v. Ross*, 2015 IL App (1st) 120089, ¶ 30; see also *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact. *Tate*, 2012 IL 112214, ¶ 9. Our supreme court has explained that a petition lacks an arguable basis where it "is based on an indisputably meritless legal theory or a fanciful factual allegation"—in other words, an allegation that is "fantastic or delusional," or is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 11-12; *People v. Brown*, 236 Ill. 2d 175, 185 (2010); see also *Ross*, 2015 IL App (1st) 120089, ¶ 31. Our review of summary dismissal is *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 38    In the present case, on appeal, the petitioner does not rely upon either of the arguments he explicitly included in his *pro se* petition. Instead, on appeal he contends that because his petition set forth claims challenging the sufficiency of the evidence to convict him for aggravated kidnaping and the effectiveness of his trial counsel, it necessarily follows that the petition *implicitly*

made out a claim of ineffective assistance of appellate counsel for counsel's failure to raise the sufficiency of evidence issue on direct appeal. However, as the State correctly notes, and the petitioner himself concedes, this argument was not *specifically* raised below in his *pro se* postconviction petition.

¶ 39    Section 122-2 of the Act specifically provides that a postconviction petition "shall *** clearly set forth the respects in which [a petitioner's] constitutional rights were violated." 725 ILCS 5/122-2 (West 2018). Section 122-3 of the Act further provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2018). As such, it is well-recognized that "claims not raised in a petition cannot be argued for the first time on appeal." *People v. Jones*, 213 Ill. 2d 498, 505-06 (2004); see also *People v. Cathey*, 2012 IL 111746, ¶ 21 (explaining that "any issues to be reviewed must be presented in the petition filed in the circuit court"); see also *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 40 ("It is black letter law that a defendant may not raise an issue for the first time on appeal from the dismissal of a postconviction petition if the petition failed to include that issue" (citations omitted)). Moreover, our supreme court has repeatedly held that the appellate court lacks the authority to ignore the strictures of section 122-3 of the Act and excuse an appellate waiver caused by the failure of a litigant to include issues in his postconviction petition. See *Jones,* 213 Ill.2d at 507-08. In fact, on more than one occasion it has criticized this court for inappropriately overlooking the waiver provision of the Act and addressing " 'claims raised for the first time on appeal for various and sundry reasons.' " *People v. Pendleton,* 223 Ill. 2d 458, 475 (2006) (quoting *Jones,* 213 Ill.2d at 506). As our supreme court explained in *Jones,* attempts by postconviction counsel to raise claims for the first time on appeal from the first-stage dismissal

of a postconviction petition are understandable, but simply not permitted under the Act:

> "[T]he typical *pro se* litigant will draft an inartful pleading which does not survive scrutiny under the 'frivolity/patently without merit' standard of section 122-2.1, and it is only during the appellate process, when the discerning eyes of a [postconviction] attorney are reviewing the record, that the more complex errors that a nonattorney cannot glean are discovered. The [postconviction] appellate attorney, not wishing to be remiss in his or her duty, then adds the newly discovered error to the appeal despite the fact that the claim was never considered by the trial court in the course of its ruling. * * * [T]he [postconviction] attorney is zealously guarding the client's rights and is attempting to conserve judicial resources by raising the claim expeditiously at the first available chance. These goals are laudable, but they nonetheless conflict with the nature of appellate review and the strictures of the Act." *Jones,* 213 Ill. 2d at 504.

¶ 40    While the petitioner here concedes that he did not explicitly raise a claim of ineffective assistance of appellate counsel below, he contends that the language of his petition, when "liberally construed" encompasses his current argument regarding the purported ineffectiveness of appellate counsel. We disagree.

¶ 41    The petitioner's *pro se* status is not an excuse for the failure to comply with the requirements of the Act. *Jones*, 213 Ill. 2d at 505-06; *People v. Vilces*, 321 Ill. App. 3d 937, 939-40 (2001). Moreover, our courts have repeatedly held that even in light of the low threshold and liberal construction applicable at the first stage of postconviction proceedings, claims that were at best implicitly raised below may not be raised on appeal. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 63; *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13; *People v. Mars*, 2012 IL App (2d) 110695, ¶ 33; *Jones*, 213 Ill. 2d at 508. Accordingly, regardless of how liberally we construe the

instant petition, we cannot conclude that it raises a claim of ineffective assistance of appellate counsel.

¶ 42     In coming to this conclusion, we find the decisions in *Cole*, 2012 IL App (1st) 102499 and *Mars*, 2012 IL App (2d) 110695, instructive. In *Cole*, we explicitly rejected a *pro se* postconviction petitioner's attempt to raise a claim of ineffective assistance of appellate counsel for the first time on appeal. *Cole*, 2012 IL App (1st) 102499, ¶¶ 13-15. In that case, the petitioner appealed from the summary dismissal of his *pro se* postconviction petition, which included claims that: (1) the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) by failing to fully question potential jurors about fundamental principles of law; and (2) the State's Attorney committed prosecutorial misconduct during closing arguments. *Id.* ¶¶ 4-6. On appeal, for the first time, the petitioner raised a claim that appellate counsel's failure to raise the issues regarding the venire and the prosecutor's comments rendered his assistance constitutionally deficient. *Id.* ¶ 9.

¶ 43     On appeal, this court found that the petitioner had waived consideration of any claim of ineffective assistance of appellate counsel. *Id.* ¶ 13. Relying on the supreme court's decision in *Jones*,  we held that "implicit" claims in a petition, which were never ruled upon by the circuit court may not be raised for the first time on appeal. *Id.* ¶ 13 (*Jones*, 213 Ill. 2d at 504).

¶ 44     We reasoned that consideration of such claims would be an improper exercise of supervisory authority not vested in the appellate court. *Id.* ¶ 15 (the "appellate court, [unlike the supreme court] does not possess [supervisory power to reach an issue the defendant has forfeited]" (citations omitted.)); see also *Jones*, 213 Ill. 2d at 508 ("our appellate court is not free, as [the supreme court] is under its supervisory authority, to excuse, in the context of post-conviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her post-conviction petition."). Moreover, we held that we were bound to adhere to "the strictures"

of the Act that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *Id.* ¶ 14 (citing 725 ILCS 5/122-3 (West 2010)).

¶ 45    Accordingly, we concluded that because it was "undisputed that the [petitioner's] postconviction petition contained no reference to appellate counsel's performance on direct appeal," the petitioner was precluded from asserting for the first time on appeal claims of ineffective assistance of appellate counsel never ruled upon by the circuit court. *Id.* ¶ 16. We therefore affirmed the summary dismissal of his petition. *Id.* ¶ 25.

¶ 46    Similarly, in *Mars*, 2012 IL App (2d) 110695, ¶ 33, we held that the petitioner could not raise an ineffective assistance of appellate counsel claim for the first time on appeal. In that case, in his *pro se* petition, the petitioner asserted that his trial counsel was ineffective for failing to challenge the sufficiency of his indictment. *Id.* ¶ 32. On appeal from the petition's summary dismissal, the petitioner argued for the first time that his appellate counsel was ineffective for failing to raise the issue of his indictment in his direct appeal. *Id.* ¶ 31. Noting that the "[l]iberal construction [of a petition] does not mean that we distort reality," we held that the petitioner had forfeited the claim by not raising it in his postconviction petition, even though he had explicitly raised other errors of appellate counsel in his *pro se* filing. *Id.* ¶¶ 32–33.

¶ 47    Applying the holdings of *Cole* and *Mars* to the instant case, we are compelled to conclude that when liberally construed the petitioner's *pro se* petition failed to state a claim of ineffective assistance of appellate counsel. The petition did not assert that counsel on direct appeal was ineffective for failing to raise the sufficiency of evidence regarding the petitioner's aggravated kidnapping conviction. In fact, the petition made no arguments whatsoever regarding appellate counsel's deficient conduct, nor even used the words "appellate counsel" anywhere in the pleading. Accordingly, just as in *Cole*, here it is undeniable that "the petition contained no reference to

appellate counsel's performance on direct appeal." *Cole*, 2012 IL App (1st) 102499, ¶ 16. As such, no matter how much we strain to leniently construe the petition in favor of the petitioner, we cannot avoid the strictures of section 122-3 of the Act and therefore conclude that the petitioner waived this issue for review. See *Id.* ¶¶ 13-15; see also *Mars*, 2012 IL App (2d) 110695, ¶¶ 32-33; see also *People v. Betance-Lopez*, 2018 IL App (2d) 160748, ¶ 32 (concluding that "no amount of 'liberal construction,' which defendant argues we should employ, will transform a claim of ineffective assistance of trial counsel into a claim of ineffective assistance of appellate counsel."); see also *People v. Williams*, 2015 IL App (1st) 131359, ¶ 22 (finding that a similarity in subject matter did not permit the reviewing court to "simply substitute the petitioner's argument on appeal that his *appellate* counsel was ineffective into his petition's argument that his *trial* counsel was ineffective" (emphases in original)); *Reed*, 2014 IL App (1st) 122610, ¶ 61 (finding that to construe an ineffective assistance of trial counsel claim as an ineffective assistance of appellate counsel claim "would require more than a liberal construction").

¶ 48    We therefore find that the petitioner's claim of ineffective assistance of appellate counsel, raised for the first time on appeal, to be barred by section 122-3 of the Act. 725 ILCS 5/122-3 (West 2018). However, as our supreme court has recognized: "This does not leave persons in [the petitioner's] position without a remedy. *** If [the petitioner] believes that he has a meritorious claim of ineffective assistance of appellate counsel, he may seek leave of court to file a successive petition." *Harris*, 224 Ill. 2d at 134.

¶ 49    Moreover, even if we were to find the petitioner's claim of ineffective assistance of appellate counsel was properly raised, that contention would not succeed on its merits. Claims of ineffectiveness of both trial and appellate counsel are governed by the two-prong standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under this standard, the petitioner must

demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced him. At the first stage of postconviction proceedings, a petition alleging ineffective assistance of appellate counsel may not be summarily dismissed if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the petitioner was prejudiced. *Tate*, 2012 IL 112214, ¶ 19. "To adequately plead a claim of ineffective assistance of counsel, the petition must satisfy both prongs of the test." *People v. Bush*, 2022 IL App (1st) 210509, ¶ 31. Failure to meet the prejudice prong, in and of itself, is detrimental to the claim. *Id.*

¶ 50    Under the second prong of *Strickland*, an appellate counsel's decision not to raise an issue on appeal is prejudicial only where the issue was meritorious. See *People v. Easley,* 192 Ill. 2d 307, 329 (2000). In other words, a petitioner who asserts that appellate counsel rendered ineffective assistance by failing to argue an issue, must make an arguable claim that but for counsel's failure to raise that issue there is a reasonable probability that the result of his proceedings would have been different, *i.e.*, his conviction or sentence would have been reversed. See *People v. Jones* 399 Ill. App. 3d 341, 372 (2010); see also *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 43 (citing *Strickland*, 466 U.S. at 694).

¶ 51    In the present case, the petitioner did not make an arguable claim that the result of his direct appeal would have been different had appellate counsel raised a sufficiency of the evidence claim regarding his aggravated kidnapping conviction.

¶ 52    The petitioner's aggravated kidnapping conviction was premised on allegations that he knowingly and secretly confined M.B.-F. against her will and committed the felony offense of criminal sexual abuse. 720 ILCS 5/10-2(a)(3) (West 2016). To sustain a charge of criminal sexual abuse the State was required to prove that the petitioner committed an act of sexual conduct by the

use or threat of force. 720 ILCS 5/11-1.50(a)(1) (West 2016)). An act of sexual conduct is defined, in part, as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused." 720 ILCS 5/11-0.1 (West 2016).

¶ 53    Contrary to the petitioner's contention, the evidence at trial by no means failed to establish that he touched M.B.-F's vagina over her underwear, so as to negate any sexual abuse, which was the predicate for his aggravated kidnapping conviction. Rather, the evidence at trial overwhelmingly established that he committed an act of sexual conduct.

¶ 54    M.B.-F.'s uncontroverted testimony at trial established that the petitioner wheeled her into a dark room, and while she remained seated in the wheelchair put his hand between and up her left thigh, after which he "touched the outside of her panties," "not [her] actual vagina, just the outside of [her] panties." M.B.-F. further testified that to protect herself she squeezed her thighs together and pushed the bag that she was holding in her lap forward. Moreover, in response to the prosecutor's question whether she consented to the petitioner touching her vagina, M.B.-F. explicitly testified that she did not. The petitioner provided no evidence at trial to contradict M.B.-F.'s testimony. Accordingly, the evidence irrefutably established that the petitioner touched M.B.-F.'s vagina through her clothing.

¶ 55    Under this record, we are compelled to conclude that the petitioner has failed to make an arguable claim that he suffered prejudice from appellate counsel's decision to refrain from challenging the sufficiency of the evidence on direct appeal. Such a claim would have been futile, and the petitioner has failed to show that counsel was ineffective for failing to argue a non-

meritorious issue.

¶ 56                              III. CONCLUSION

¶ 57    For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 58    Affirmed.